THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VITTORIO CAMPBELL, Defendant-Appellant.

First District (2nd Division)   No. 81—629

Opinion filed June 21, 1983.

632

Steven Clark and Karen Michels, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Paula Carstensen, and Thomas J. Finn, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

In a jury trial, defendant, Vittorio Campbell, was found guilty of armed robbery and aggravated battery and was sentenced to serve two concurrent eight-year terms of imprisonment in the Illinois Department of Corrections. On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt; that he was prejudiced by evidence suggesting that an accomplice had implicated him and by the prosecutor's repeated reference to this matter in closing argument; and that the trial court improperly restricted his direct examination. For the reasons hereinafter stated, we reverse defendant's convictions and remand the cause for a new trial.

Miller Tan testified to the following:

At 12:30 a.m. on June 3, 1980, Tan was driving his Ford pickup truck north on Halsted Street in Chicago. Approximately 100 feet north of the intersection of Halsted and 72nd Street, two young women "flagged" Tan. After he parked his truck, a man identified by Tan as Dwayne Robertson approached him and asked him if he "wanted a date, a young lady." Robertson and Tan agreed to a price of $20 but Tan refused to pay him until he saw the woman. Robertson walked across the street to a vehicle which was parked on the west side of Halsted and spoke briefly with a young black woman who was standing outside the car. The woman crossed the street, entered Tan's truck and "quoted" a price of $20 to spend the day with her. Tan accepted and suggested that they go to a motel. The woman said that she first had to go to her home. She exited the truck, walked across the street, appeared to have a conversation with Robertson

and then returned to Tan's vehicle.

The woman told Tan to stop at a Clark gas station located at 68th and Halsted and asked him for $5 so that she could buy a "nickle [*sic*] bag of marijuana." Tan gave her the money, stating that he would owe her only $15 after their "business was transacted." The woman took the $5, walked to a blue Buick parked at the station and returned to Tan's truck. Tan and the woman then proceeded to 61st and Wallace where he parked his truck and left the motor running. The woman exited his truck and returned alone a few minutes later.

After she reentered his vehicle, Tan looked into his mirror and noticed Robertson "creeping" along the driver side of his truck. Robertson, who had a cast on his right arm, reached into the truck and placed his right hand across Tan's face, knocking Tan's prescription glasses from his face. Another man, whom Tan identified as defendant, pulled the woman out of the truck, entered the vehicle on the passenger side and thrust a sawed-off shotgun into his right side.

Defendant hit Tan on the side of his head with a shotgun, stating that he always wanted to kill "a pig." Tan protested that he was not a policeman but defendant kept repeating that he wanted to kill "a pig," and pushed the shotgun into Tan's rib cage. Robertson, who was standing outside of the truck on the driver side, struck Tan several times on the left side of his forehead with his cast.

Defendant and Robertson took Tan's bracelet, his watch and between $40 and $50 in currency. They then forced Tan to the floorboard of the truck and defendant hit Tan with the shotgun on the left side of his head behind the ear. Robertson entered the truck, stepped over Tan and drove the truck approximately 75 feet. Defendant and Robertson then exited the truck, threw the keys onto the floorboard and fled from the scene. There was a third black man standing behind Robertson but Tan saw him only momentarily. After the robbery, Tan drove to the police station located at 51st and Wentworth where he reported the incident. He later spoke with several other police officers at 61st and Racine.

Tan estimated that six to eight minutes had elapsed from when he first saw Robertson in the mirror until he was forced to the floorboard. He thought that there was a street lamp approximately five feet in front of the truck and there was some additional illumination from a nearby railroad crossing. Since defendant failed to close the passenger side door when he entered the truck, the inside dome light remained on for the entire time defendant was inside the vehicle. Tan was compelled to look in defendant's direction because Robertson had placed his casted arm on Tan's face. Although Tan had lost his

glasses, he experienced no difficulty seeing defendant who was only two feet away from him.

On cross-examination, Tan testified that he was beaten so badly that he was bleeding from several different places on his head. Yet, he did not seek medical attention for several days. Although, at trial, Tan testified that he had not been knocked unconscious, he admitted that at the preliminary hearing he had testified that he became unconscious when defendant struck him on the side of his head with the shotgun. Tan explained that he had been "dazed."

On June 4, 1980, the day following the robbery, at approximately 4:30 p.m., Tan identified Robertson in a lineup. Ten days later, on June 14, 1980, sometime between 3:30 a.m. and 4:30 a.m., Tan selected defendant's photograph from an array of seven photographs of black men which the police showed to him at his home. The defendant was the only person depicted who had a beard. He then accompanied the officers to 61st and Racine where he also identified defendant in a lineup.

In his testimony, defendant denied any involvement in the armed robbery and aggravated battery of Miller Tan. Defendant stated that at the time of the offenses, he was playing pool, drinking and watching television in a lounge at 71st and Halsted.

## I

■ Defendant contends that he was not proved guilty beyond a reasonable doubt. In the first part of his argument, defendant submits that Tan's out-of-court identification of defendant's photograph was unnecessary, because defendant was already in custody, and impermissibly suggestive, because he was the only person depicted who had a beard. Defendant has waived consideration of this matter, however, since he made no motion to suppress either Tan's out-of-court identifications or his in-court identification.

Defendant also maintains that the evidence was insufficient to establish his guilt. We have set forth the evidence presented at trial and will not restate that evidence here. We have reviewed the entire record and are satisfied that there was sufficient credible evidence from which the jury could have concluded that defendant was guilty of armed robbery and aggravated battery.

## II

■ Defendant next contends that he was prejudiced by evidence suggesting that an accomplice had implicated him and by the prosecutor's repeated reference to this matter in closing argument.

At trial, Chicago police officer Stan Salabura testified that after Tan identified Dwayne Robertson in the lineup held on June 4, 1980, Salabura and his partner, John Sehr, spoke with Robertson. As a result of that conversation, the officers reviewed their files looking for someone who used the name "Vick." Salabura stated that the officers found the name of a person who was known as "Vick." Defense counsel objected to this reference. The trial court sustained the objection, struck all testimony concerning "Vick," instructed the jury to disregard such testimony and directed the prosecutor not to pursue this line of questioning.

Salabura then testified that he and his partner left the station and drove to the defendant's residence at 5743 West 65th Place where they spoke with a woman who identified herself as Mrs. Campbell. At the conclusion of Salabura's direct examination, the prosecutor asked:

"Before you talked to Dwayne Robertson in the early hours of 4th June, 1980, did you know where Vittorio Campbell lived?"

Defense counsel's objection to this question was sustained.

On cross-examination by defense counsel, Salabura stated that Tan did not mention the name "Vick" to him. On redirect, the prosecutor attempted to elicit from Salabura the fact that Robertson had in fact provided him with the name "Vick." The trial court sustained defense counsel's objection on the grounds that Robertson's statements to Salabura were hearsay and that "the statements of a codefendant are not admissible against a princip[al] defendant who is on trial." The court announced that it would "not permit the State to elicit evidence that the co-defendant in this case implicated this Defendant."

During rebuttal closing argument, the prosecutor commented:

"I agree with counsel, it was only after the police talked to Dwayne Rober[t]son that they started looking for Vittorio Campbell.

[DEFENSE COUNSEL]: Objection.

THE COURT: Objection's overruled.

[THE PROSECUTOR]: You have got to use your common sense. Where do you think the police got the name of Vittorio Campbell? They got it from Dwayne Rober[t]son.

[DEFENSE COUNSEL]: Objection.

THE COURT: Objection is sustained, the jury is instructed to disregard the last remarks of counsel.

[THE PROSECUTOR]: Ladies and gentlemen, use your common sense. The police didn't know about Vittorio Campbell before Dwayne Rober[t]son got arrested, after Dwayne

Rober[t]son put in the line-up and there is an interview with Dwayne Rober[t]son—

[DEFENSE COUNSEL]: Objection.

THE COURT: Objection is sustained, counsel you are instructed to change your line of argument now.

[THE PROSECUTOR]: The first thing the officer did was to go to Vittorio Campbell's house, then you heard evidence, Officer [Salabura] ordered a picture of Vittorio Campbell. Why, why Vittorio Campbell of all the people in the world, why did he order a picture of Vittorio Campbell? Use your common sense.

The officer ordered the picture of Vittorio Campbell because the officer learned Vittorio Campbell was involved in this case and the officer was going to show Vittorio Campbell's picture to the victim Miller Tan.

[DEFENSE COUNSEL]: Objection.

THE COURT: Objection is sustained, the jury is instructed to disregard the last remarks of counsel."

Defendant contends that the testimony of Salabura and the comments of the prosecutor in closing argument injected prejudicial and inadmissible hearsay into the trial and violated defendant's sixth amendment right to confront and to cross-examine his putative accuser, Dwayne Robertson. The State initially responds that defendant has waived this contention because he failed to include this issue in his post-trial motion.

Generally, a defendant must specifically raise an issue in his post-trial motion or it will be deemed waived. (*People v. Andino* (1981), 99 Ill. App. 3d 952, 954-55, 425 N.E.2d 1333.) Supreme Court Rule 615(a), however, provides that "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (87 Ill. 2d R. 615(a).) In the instant case, we believe that the plain error rule is applicable and we reach the merits of this issue.

In *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, two defendants, Bruton and Evans, were tried jointly, but Evans chose not to testify. Evans' confession, including statements implicating Bruton, were admitted into evidence. The Supreme Court reversed Bruton's conviction because the confession constituted inadmissible hearsay which "added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination, since Evans did not take the stand." (391 U.S. 123, 128, 20 L. Ed. 2d 476, 480, 88 S. Ct. 1620, 1623.) The court thus

held that Bruton had been denied his constitutional right of confrontation. 391 U.S. 123, 128, 20 L. Ed. 2d 476, 480, 88 S. Ct. 1620, 1623.

■ In our judgment, the defendant in the instant case was also denied his right of confrontation. Although defendant's case was severed from Robertson's, the prosecutors, in defiance of the trial court's explicit instructions, insisted upon repeatedly informing the jury that Robertson had implicated the defendant. Such implications are "devastating to the defendant" and "their credibility is inevitably suspect." (*Bruton v. United States* (1968), 391 U.S. 123, 136, 20 L. Ed. 2d 476, 485, 88 S. Ct. 1620, 1628.) "The unreliability of such evidence is intolerably compounded when the alleged accomplice * * * does not testify and cannot be tested by cross-examination." 391 U.S. 123, 136, 20 L. Ed. 2d 476, 485, 88 S. Ct. 1620, 1628.[1]

The State's argument that in examining Salabura and in closing argument the prosecution was merely trying to explain why Salabura arrested defendant is not borne out by the record. We note that the prosecutor declined the court's offer to strike the evidence that defendant had been arrested without a warrant or to admonish the jury that the legality of the defendant's arrest "should play no part in any decision that they make in this case." The prosecutor also refused to suggest any other method of referring to the defendant's arrest which would not have disclosed Robertson's implication of defendant. In our opinion, the prosecutor's examination of Salabura and comments in closing argument were evidently calculated to urge the jury to convict defendant because Robertson had incriminated him in the robbery. While the trial court sustained virtually all of defense counsel's objections to the prosecutor's examination and comments, the salutary effect of these rulings was undermined by the repetition of the objectionable remarks. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 471, 220 N.E.2d 432.) Finally, we find no basis in the record to support the State's contention that the prosecutor's comments in closing argument were invited by defense counsel's cross-examination of Officer Salabura or by his closing argument.

After carefully examining the record, we are constrained to conclude that the defendant was deprived of his right to a fair and impar-

---

[1]The State's reliance on *People v. Wright* (1974), 56 Ill. 2d 523, 532-33, 309 N.E.2d 537, is misplaced. In *Wright,* our supreme court held that no *Bruton* problem arose where the cases of two defendants were severed and the confessing defendant already had been tried, convicted and sentenced and was apparently available to the nonconfessing defendant to bring into court for cross-examination at the time of his trial. Here, there is no evidence that Robertson had been tried prior to defendant and that he would have been available for cross-examination.

tial trial. Although the State's evidence was sufficient to sustain defendant's convictions in a trial free from prejudicial error, when considered as a whole, we cannot say that the questions and comments complained of were harmless beyond a reasonable doubt or did not contribute to defendant's convictions. (*People v. Weinger* (1981), 101 Ill. App. 3d 857, 872, 428 N.E.2d 924.) Defendant therefore must be granted a new trial. In light of our disposition of this issue, it is unnecessary to consider defendant's remaining contention.

For the foregoing reasons, the judgments of defendant's convictions are reversed and the cause is remanded to the circuit court of Cook County for a new trial.

Reversed and remanded.

DOWNING, P.J., and HARTMAN, J., concur.