THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MAR-VELL SINGLETARY, Defendant-Appellant.

First District (6th Division)    No. 1—93—3018

Opinion filed June 30, 1995.

EGAN, J., specially concurring.

Winston & Strawn, of Chicago (Jack J. Crowe, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Andrea Bonin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Following a jury trial, defendant, Marvell Singletary, was found guilty of possession with intent to deliver more than 15 grams of a controlled substance (720 ILCS 570/401 (West 1992)) and sentenced to eight years in prison. This sentence was to run consecutively with an earlier one-year sentence where defendant pled guilty to an unrelated charge of possession of cocaine. The issues on appeal are: (1) whether defendant was deprived of his sixth amendment right to confront witnesses against him where hearsay statements of a confidential informant were admitted as evidence against him; and (2) whether the jury properly found defendant guilty of possession of a controlled substance with the intent to deliver beyond a reasonable doubt.

The evidence presented by the State was through the testimony of police officer Wayne Bunch, police officer Wayne Gulliford and forensic chemist Arthur Kruski. On June 9, 1992, Officer Bunch was assigned to the narcotics section of the organized crime division of the police department, where he had worked for four years. While at the police station, Bunch received a telephone call from a confidential informant sometime between 9 a.m. and 10:30 a.m. The informant had provided Bunch with reliable information in the past which resulted in arrests and the seizure of contraband. During the June 9 telephone call the informant told Bunch that a person named Marvell, whom the informant briefly described, would be in a small blue Dodge or Plymouth hatchback car driving to Dearborn Homes, a housing project at 2971 South Dearborn, to pick up a package of cocaine.

After receiving the information, Bunch contacted his partner, Officer Gulliford, as well as Officer Joseph Rokas and Sergeant William Owens. The four officers, along with Gulliford's canine, Bosco, went to the vicinity of 2971 Dearborn. Gulliford trained with Bosco at the canine training center for eight weeks in order to become a narcotics dog handler, and he had been working with Bosco since April 4, 1992.

At approximately 10:35 a.m. the officers arrived at the Dearborn Homes and parked their unmarked police car one block from the building where they had an unobstructed view of the building parking lot. Gulliford, Bunch and Bosco remained in the car while Rokas and Owens positioned themselves about three-quarters of a block east of the building.

Around 15 minutes after the officers arrived, Bunch and Gulliford saw a blue hatchback vehicle pull into the parking lot at 2911 South Dearborn. There were two men in the front seat of the vehicle and one (defendant) in the back seat. The officers saw defendant exit the vehicle, go into the building, and return approximately two minutes later. During the time that defendant was away from the vehicle, the officers did not see anyone go into the trunk, hatch area, or the back seat of the vehicle.

After defendant reentered the vehicle, it drove away from 2971 South Dearborn and headed toward the expressway. Before entering the expressway, the vehicle stopped at a traffic signal at 31st Street and La Salle. At this time Bunch and Gulliford activated their emergency equipment. Gulliford stopped his vehicle two to three feet behind the blue vehicle. Bunch approached the right rear of the vehicle where he saw defendant turn and look over his right shoulder in Bunch's direction. According to Bunch, defendant then placed his hand inside his left jacket pocket, then removed his hand and reached over to the left side of him under the seat cushion. In the meantime, Gulliford approached the vehicle on the driver's side.

The three occupants were asked to exit the vehicle and were "patted down" for weapons. None were recovered. At this time, based on prior information from the confidential informant, Gulliford brought out Bosco and gave him a command to fetch dope.

Bosco came over to the driver's side of the vehicle and started scratching at the door. Bosco was then allowed to enter the vehicle, where he went to the back cushion and began scratching at it. He stuck his muzzle underneath the cushion and retrieved a three-inch by three-inch clear plastic sandwich-type bag containing two smaller clear plastic bags each containing one piece of off-white hard substance which was later found to be crack cocaine.

Officer Gulliford recovered the bag from Bosco and gave it to Bunch, who later inventoried it and sent it to the Chicago crime lab for analysis. Defendant was then placed under arrest and advised of his *Miranda* rights. Bunch and Gulliford both stated that defendant acknowledged that the bags were his and that the other two men in the car knew nothing about them. The other men in the vehicle were then released. Gulliford testified that the street value of the cocaine recovered was $5,684.

On cross-examination, Bunch testified that in exchange for the information provided by the informant he was paid a sum of money but not given any assistance with court proceedings against him. Bunch and Gulliford testified that no fingerprints were recovered from the plastic bags. Gulliford also acknowledged on cross-examination that Bosco did not react when he walked past defendant and the other occupants of the vehicle, but on redirect, he explained that Bosco did not always react when someone was seated on packaged cocaine, and that in this instance, Bosco was not close enough to the occupants of the vehicle.

Arthur Kruski was qualified by the court as an expert in forensic chemistry. Kruski testified that on July 12, 1992, he was working in the Chicago police department crime laboratory. On that date he was assigned to analyze one clear plastic bag containing two clear plastic bags each containing a white rocky substance, for the presence of a controlled substance. The total weight of the two bags was 38.65 grams. Based on the tests he conducted, Mr. Kruski concluded that both bags contained crack cocaine.

Defendant testified that at approximately 9 a.m. on June 9, 1992, he was in the back parking lot of 5326 South State Street, where he lives with his girlfriend and son. He asked the brother-in-law of defendant's friend, June, and a friend of the brother-in-law to give him a ride to his friend's home at the Dearborn Homes. The names of the two men who gave defendant a ride are Charles Lawshea and Tumery (Tyrone) Moore. On the way to Dearborn Homes, Moore stopped at a pay telephone to make a call. They then drove to 2971 South Dearborn, where defendant went into the building, determined that his friend was not at home and returned to the car.

Defendant further testified that the police stopped their vehicle, had all three men get out of the car and they searched them and found nothing. Defendant then stated that a police dog searched the vehicle and found "what was supposed to be in the car" according to defendant. The officers questioned the driver apart from defendant and then returned and told defendant he was under arrest for possession of cocaine. The other two men were then released. Defendant testified that he was not advised of his rights and did not make any statements to the police. Defendant did acknowledge being arrested for possession of cocaine in 1991 and receiving probation, which he completed satisfactorily.

On cross-examination, defendant stated that he had been friends with June for three or four months but did not know her last name. Defendant stated that he never hung around with the two men who drove him to Dearborn Homes. According to his testimony, defendant

got in the car with Lawshea and Moore at around 9:30 a.m., the telephone call they stopped to make took about 5 or 10 minutes, and they arrived at the Dearborn Homes about 10 to 15 minutes later. When defendant was asked what he did between 9:30 and 10:15 a.m., he stated that he was in the parking lot with June trying to get a ride and did not know exactly what time he got into the car. Defendant acknowledged that nothing was handed to him or placed in the back seat while he was in the vehicle.

In rebuttal, the State offered the certified convictions of defendant for possession of cocaine in 1990 and 1991. He received probation for both convictions.

Defendant contends that he should be granted a new trial because his conviction was based on the use of inadmissible hearsay statements from an undisclosed confidential informant. Defendant further contends that the prejudicial effect of the hearsay statements was compounded by the prosecutor's use of the statements in her opening statement and closing argument, and by her emphasis on the reliability of the confidential informant.

Hearsay evidence is " 'testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' [Citation.] The fundamental purpose of the hearsay rule was and is to test the real value of testimony by exposing the source of the assertion to cross-examination by the party against whom it is offered." *People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738.

The complained-of statements regarding the substance of Bunch's conversation with the informant were presented during the prosecutor's direct examination of Bunch:

"Q. On the morning of June 9, 1992, did you receive a phone call at the station where you were working?

A. Yes, I did.

Q. And what if any information did you get in this phone call?

DEFENSE COUNSEL: Objection, hearsay.

PROSECUTOR: Judge, its—.

THE COURT: Basis is hearsay, Miss State's Attorney?

PROSECUTOR: It's offered to show the reason for what the officer did.

THE COURT: On that basis I will allow it. I am not *** letting this testimony in for the truth of the matter, I am only letting the response of the officer in to show why he went to a certain place and *** took a certain action. Okay, go ahead.

Q. What information did you receive?

A. The information was that a person named Marvel[l], and I received a description, a brief description of Marvel[l], type of auto that he would be riding in, and that he was going to go to 2971 South Dearborn and pick up a package of cocaine.

\* \* \*

Q. The person you received the information from, have you ever spoken with that person prior to that?

A. Yes, I have.

Q. And in what capacity?

A. As a confidential informant.

Q. When you had worked with the confidential informant prior to June 9, 1992, what were the outcomes of the prior acts?

A. He has provided me with reliable information several times prior to this date which resulted in contraband being seized and subjects arrested for narcotics violations.

Q. Based on the information that you received from this confidential informant, what did you do?

A. I contacted Officer Gulliford and Sergeant Owens and Joe Rokas, and the four of us along with Officer Gulliford's canine went to the vicinity of 2911 Dearborn."

In *People v. Cameron*, the trial court allowed an officer (Kempf) to testify concerning his initial contact with an informant, a later call from the informant that defendant had purchased some cocaine, and that defendant was allegedly concerned that the police were watching him, so he would have to dispose of the drugs. The court permitted the testimony with the limitation that the jury consider the evidence only for the purpose of showing how the officer received notice that a transaction was taking place.

The appellate court held:

"It was appropriate to permit Kempf to testify that he had a conversation with his confidential informant who told Kempf that defendant had gone to a tavern in Quincy to pick something up. It was not appropriate to permit Kempf to testify that the package to be picked up was cocaine." (Emphasis omitted.) (*People v. Cameron* (1989), 189 Ill. App. 3d 998, 1004, 546 N.E.2d 259.)

The court further stated:

"The above references to 'cocaine' and 'dope' were in no way necessary to explain police conduct, and, despite the limiting instructions which the court gave concerning these references, we are concerned that these references would likely be understood by the jury as pertaining to necessary elements of the crime for which defendant was being tried." (*Cameron*, 189 Ill. App. 3d at 1004-05.)

The *Cameron* court also discussed the theory regarding the admission of out-of-court statements to explain a course of police conduct and

the danger of misuse of such statements. Quoting McCormick, the court stated that:

> " 'In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted "upon information received," or words to that effect, should be sufficient. Nevertheless, cases abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give information upon which he acted. The need for the evidence is slight, the likelihood of misuse great.' " (*Cameron*, 189 Ill. App. 3d at 1004, quoting E. Cleary, McCormick on Evidence § 249, at 734 (3d ed. 1984).)

The court concluded that the admission of Kempf's testimony containing the references to cocaine and dope was error. *Cameron*, 189 Ill. App. 3d at 1005.

In *People v. Pryor* (1989), 181 Ill. App. 3d 865, 537 N.E.2d 1141, the court stated:

> "A police officer may testify that a conversation with an individual took place and he acted thereon because such testimony is within the officer's personal knowledge and is competent to establish investigatory procedure. [Citation.] However, testimony that recounts the substance of a conversation is not within the officer's knowledge and is inadmissible hearsay." *Pryor*, 181 Ill. App. 3d at 870.

In *Pryor*, a police officer testified that a passing citizen flagged him down and stated that a black male attempted to sell him marijuana. The officer also testified as to the description of the man given to him by the citizen. The court held that, because the officer's testimony set forth the substance of his conversation with the passing citizen, it was inadmissible hearsay. *Pryor*, 181 Ill. App. 3d at 870. See also *People v. White* (1985), 134 Ill. App. 3d 262, 479 N.E.2d 1121 (officer's testimony as to the substance of his conversation in which he or she named the defendant as one of the three "perpetrators" of the crime was inadmissible hearsay).

The State first argues that defendant has waived his right to appeal these issues because they were not set forth in his motion for a new trial. Furthermore, defendant did not object to Bunch's testimony regarding the reliability of the informant or to the prosecutor's opening statement and closing argument.

■ In his motion for a new trial, defendant made no reference to Bunch's testimony regarding his conversation with the informant or his testimony regarding the informant's reliability. As to the

prosecutor's improper statements, the only mention of them in defendant's post-trial motion was the statement that "[t]he assistant State's Attorney made prejudicial, inflammatory and erroneous statements in closing argument designed to arouse the prejudices and passions of the court, thereby prejudices [*sic*] the defendant's right to a fair trial." In raising objection to a prosecutor's comments, a defendant cannot merely allege that a prosecutor made inflammatory or prejudicial remarks but must state what specific improper remarks were made. (*People v. Smith* (1985), 139 Ill. App. 3d 21, 27, 486 N.E.2d 1347.) In order to preserve an error for review, a defendant must both object at trial and raise the issue in a written post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) However, Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)) provides that plain errors affecting substantial rights may be noticed on appeal even though not objected to at trial or in a post-trial motion.

> "The plain error rule permits a reviewing court to consider a trial error not properly preserved for review in two circumstances. First, where the evidence in a criminal case is closely balanced, a reviewing court may consider a claimed error not properly preserved so as to preclude argument of the possibility that an innocent man may have been wrongly convicted. [Citation.] A court will examine the record only to see if the evidence is 'closely balanced.' If not, there is no need to consider an error which was not properly preserved for review. [Citation.]
>     \*\*\*
> The plain error rule may also be invoked where the error is so fundamental and of such magnitude that the accused was denied a fair trial." (*People v. Herrett* (1990), 137 Ill. 2d 195, 209-10, 561 N.E.2d 1.)

In the instant case, we conclude that the plain error rule is applicable as the evidence is closely balanced and the error affected defendant's substantial rights.

The State next argues that the confidential informant's statements to Bunch were admissible hearsay because they were not offered to prove the truth of the statements, but rather to show why the officers took the steps they did and, in addition, the trial judge gave a limiting instruction to the jury on the use of the testimony.

■ In the case *sub judice*, Bunch's testimony regarding his conversation with the confidential informant that "he was going to go to 2971 South Dearborn and pick up a package of cocaine," like the testimony in *Cameron* (189 Ill. App. 3d at 1004), went beyond what was necessary to explain the officer's conduct and presented the substance of his conversation with the informant. Therefore, the admission of Bunch's testimony as to these statements was error.

Defendant further argues that the prejudicial hearsay statements emphasized in the prosecutor's opening statement and closing argument also went well beyond what was necessary to explain Bunch's actions leading up to defendant's arrest. In opening statement, the prosecutor stated:

> "On June 9, 1992, Chicago police Officer Bunch and Officer Gulliford received information over the phone at their police station that a quantity of narcotics were [*sic*] going to be picked up by a light skinned black man by the name of Marvel[l], and he would be arriving at *** the Dearborn Homes housing development, in a small older light blue car."

In closing argument, the prosecutor stated:

> "The confidential informant told officer Bunch that it would be a person named Marvel[l]. He gave a physical description. He said that Marvel[l] would be arriving at a specific address sometime that same morning. He described the car in which Marvel[l] would be arriving in, an older small blue car."

In *People v. White* (1989), 192 Ill. App. 3d 55, 61, 548 N.E.2d 421, the court held that although the State's use of the officer's testimony regarding his conversation with an accomplice to explain investigatory procedure was properly admitted, "the State's remarks here are an example of the recently recognized practice of prosecutors taking improper advantage of the admissibility of testimony by a police officer to explain his investigatory procedure, only to use that testimony, once it is admitted, to impermissibly use it in closing argument." See also *People v. Campbell* (1983), 115 Ill. App. 3d 631, 450 N.E.2d 1318.

In the instant case the prosecutor's remarks in opening statement and closing argument, like Bunch's testimony as to his conversation with the informant, also went beyond what was necessary to explain investigatory procedures and were used to establish defendant's guilt rather than explain police conduct.

In support of its argument, the State cites *People v. McNeal* (1987), 160 Ill. App. 3d 796, 513 N.E.2d 897. In that case the police officer testified that during the course of his investigation he spoke with a witness to a murder (Berrian) who informed him that she saw defendant drag one of the victims into an alley by the neck with the help of another person and that shortly thereafter she heard shots. Murphy testified that, based on this information, he located defendant and arrested him. Murphy further stated that Berrian subsequently identified defendant in a lineup. The *McNeal* court held that the testimony of Murphy was not inadmissible hearsay because it was not offered to prove that the substance of their statements was

true, but was offered to describe the course of an investigation that culminated in the defendant's arrest and indictment. (*McNeal*, 160 Ill. App. 3d at 800-01.) We disagree with *McNeal* because of better reasoned authority and because the cases on which it relies do not support its holding.

■ The State argues that any error in Bunch's testimony as well as the prosecutor's opening statement and closing argument was cured by the trial court's limiting instruction to the jury as to the purpose of the opening statement and closing argument. However, we first note that what the State has characterized as a limiting instruction to the jury during Bunch's testimony was the trial judge's comment to the prosecutor as follows:

"[PROSECUTOR] : It's offered to show the reason for what the officer did.

[THE COURT] : On that basis, I will allow it. I am not letting this testimony in for the truth of the matter. I am only letting the response of the officer in to show why he went to a certain place and to [*sic*] took a certain action. Okay, go ahead."

Furthermore, even if the above comment can be considered as a limiting instruction, the Supreme Court in *Bruton* held that the admission of the prejudicial statements was not cured by a limiting instruction "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining the petitioner's guilt." *Bruton v. United States* (1968), 391 U.S. 123, 126, 20 L. Ed. 2d 476, 479, 88 S. Ct. 1620, 1622.

The State's final argument is that any error in the admission of the out-of-court statements as well as the prosecutor's improper argument was harmless. " 'Evidentiary errors *** can be labeled harmless only if properly admitted evidence is so overwhelming that no fair-minded jury could reasonably have voted to acquit the defendant.' " *People v. Yates* (1983), 98 Ill. 2d 502, 541, 456 N.E.2d 1369, quoting *People v. Carlson* (1982), 92 Ill. 2d 440, 449, 442 N.E.2d 504.

■ In the instant case, the properly admitted evidence of defendant's guilt was the officers' testimony that defendant exited the vehicle, entered the Dearborn Homes, and returned to the back seat of the vehicle. When the vehicle was stopped, defendant was seen looking in one of the officer's direction, placing his hand in his inside jacket pocket and then reaching under the seat cushion. According to the officers' testimony, the contraband was retrieved from under the back seat cushion shortly thereafter. The officers also testified that defendant admitted that the contraband belonged to him once it was discovered. However, defendant denied making this state-

ment and also denied possession of the contraband or that he placed it under the seat. We also note that, although the officers testified that they saw no one other than defendant enter the back seat of the vehicle, the contraband could have been placed there before the officers began their surveillance. There was also no physical evidence obtained that the contraband was ever in defendant's possession. For these reasons, we conclude that, while the evidence was sufficient to convict, we cannot say that it was so overwhelming that no fair-minded jury could have voted to acquit defendant.

Defendant next contends that the evidence was insufficient to find him guilty beyond a reasonable doubt because the only connection between him and the cocaine was that he happened to be sitting in the back seat of the vehicle where it was discovered. When an appeals court reviews the sufficiency of evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89.) Then, " '[o]nce a defendant has been found guilty of the crime charged, the factfinder's role as the weigher of the evidence is preserved through a legal conclusion that upon judicial review *all the evidence* is to be considered in the light most favorable to the prosecution.' " (Emphasis in original.) (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, quoting *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789.) Further, discrepancies in the testimony of witnesses go to the issue of credibility, which must be judged by the trier of fact. *People v. Thomas* (1981), 96 Ill. App. 3d 443, 450, 421 N.E.2d 357.

In the case *sub judice*, contrary to defendant's contention, there was more evidence linking him to the cocaine than his location in the back seat of the vehicle. After receiving information from a confidential informant, Officers Bunch, Gulliford, Rokas and Sergeant Owens, along with Gulliford's canine, Bosco, went to the vicinity of 2971 South Dearborn. Bunch and Gulliford parked their car a block from the building where they had an unobstructed view of the parking lot while the other two officers positioned themselves nearby. Shortly thereafter, a blue hatchback vehicle arrived in the parking lot. Defendant exited the vehicle, entered the building and returned to the back seat of the vehicle a short time later. The two other occupants never left the vehicle during the time that it was being observed by the officers. Bunch and Gulliford then stopped the vehi-

cle shortly after it left the Dearborn Homes. As the two officers approached the vehicle, Bunch saw defendant turn, look over his right shoulder in Officer Bunch's direction, move his right hand to his left inside jacket pocket and then bend over to his left side under the seat cushion. The occupants exited the vehicle, and Bosco, in response to a command to fetch dope, retrieved the plastic bag containing the contraband from underneath the rear seat cushion. Defendant was then placed under arrest and told the officers that the plastic bag belonged to him.

We thus conclude that, even without the admission of the challenged statements above, the evidence was sufficient to find defendant guilty beyond a reasonable doubt.

Accordingly, the judgment of the circuit court is reversed and the case is remanded for a new trial free of prejudicial error.

Reversed and remanded.

ZWICK, J., concurs.

JUSTICE EGAN, specially concurring:

The majority opinion cogently points out that McCormick's treatise on evidence has recognized with criticism that the reported cases "abound" with instances of the State offering out-of-court statements to explain police procedure. The case cited by the majority which quoted McCormick, *People v. Cameron*, was decided in 1989. But the Illinois Appellate Court has condemned the use of the substance of conversations between police officers and witnesses at least 10 years before *Cameron*. (See *People v. Johnson* (1979), 68 Ill. App. 3d 836, 386 N.E.2d 642.) The *Johnson* court referred to *People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364, in which the court approved the testimony of a police officer that he had a conversation with a witness and then proceeded to a hospital where the defendant was found and arrested. The court in *Coleman* pointed out that the officer did not testify to the substance of the conversation but merely to the fact that a conversation took place. *Coleman* was decided 21 years ago.

I have previously expressed my views on the question in *People v. Johnson* (1990), 202 Ill. App. 3d 417, 564 N.E.2d 843 (new trial ordered because of the use of hearsay testimony of officer), and in *People v. Rodriguez* (1991), 227 Ill. App. 3d 397, 592 N.E.2d 18. In both cases it was pointed out that the ultimate authority in Illinois, the supreme court, said that it was proper for a police officer to testify that after he spoke to the victim he went to look for the defendant. But the

supreme court expressly held that it would have been error to permit the officer to testify to the contents of the conversation he had with the victim. *People v. Gacho* (1988), 122 Ill. 2d 221, 254-55, 522 N.E.2d 1146.

In the more recent case of *People v. Jones* (1992), 153 Ill. 2d 155, 606 N.E.2d 1145, the supreme court adhered to *Gacho* and held that the substance of a conversation between a police officer and a third party was inadmissible if the conversation would involve "any matter relevant to the trial." (153 Ill. 2d at 160.) In the case before us, there is no question that the substance of the conversation involved a matter material to the trial.

In *Johnson* we said that regardless of what some appellate court opinions had said, the supreme court in *Gacho* had resolved any question on the matter. In *Rodriguez* we "express[ed] our hope that in the future the State would follow the directions of the supreme court in *People v. Gacho* and would not persist in skirting, and often violating, the rules of admissibility governing hearsay." 227 Ill. App. 3d at 410.

Alas, our words, the words of *Cameron, Johnson,* and especially *Gacho* and *Jones,* have fallen on deaf prosecution ears. I confess to a feeling of personal frustration when today we must reverse an otherwise proper conviction because the State insists on introducing this improper evidence. What makes my feeling of frustration even stronger is that the improper evidence was unnecessary. Jurors are not fools. The State could have established in the minds of the jurors the inference that the informant had given some information involving narcotics at 2971 Dearborn simply by following the procedure that was followed in *Gacho.* Unfortunately, the problem created by the introduction of this evidence persists; and I have the nagging suspicion that it persists because some prosecutors are ever confident that we will write off the error as harmless.