No. 3--08--0994

Opinion filed March 30, 2011

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2011

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois |
|---|---|---|
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.  06--CF--882 |
| LLOYD SHORTY, | ) ) | Honorable James E. Shadid, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Presiding Justice Carter and Justice Lytton concurred in the judgment and opinion.

**OPINION**

The State charged defendant, Lloyd Shorty, with unlawful possession of heroin and possession with intent to deliver heroin in violation of sections 402(c) and 401(c)(1) of the Illinois Controlled Substances Act.  720 ILCS 570/401(c)(1), 402(c) (West 2006).  A jury found defendant guilty of both charges and the circuit court of Peoria County sentenced him to 19 years' incarceration.  Defendant appealed, claiming he was denied a fair

trial by the introduction of improper hearsay evidence and the trial court's failure to properly ask the potential jurors if they understood and accepted fundamental principles of criminal law as mandated by Illinois Supreme Court Rule 431(b) (eff. May 1, 2007). This court affirmed defendant's conviction. *People v. Shorty*, 403 Ill. App. 3d 625 (2010).

In a supervisory order dated January 26, 2011, our supreme court directed us to vacate our judgment and reconsider our decision in light of *People v. Thompson*, 238 Ill. 2d 598 (2010). *People v. Shorty*, 239 Ill. 2d 582 (2011) (table). After reconsideration, we, again, affirm defendant's conviction.

FACTS

Defendant's case proceed to trial on July 14, 2008. At the beginning of *voir dire*, the court spoke to the venire as a group and told prospective jurors that the defendant was presumed innocent. The court further informed the jury pool that the State had the burden of proving defendant's guilt beyond a reasonable doubt, that defendant was not required to prove his innocence or present evidence, that defendant was not required to testify, and finally that defendant's choice not to testify could not be used against him.

After announcing those principles, the court stated that "all jurors must be willing to accept this basic principle." When individual questions were posed to the prospective jurors,

2

the court asked all but one if they accepted those basic principles. Each juror asked responded in the affirmative.

The case proceeded to trial, and in opening arguments, the State informed the jury that Officer Batterham would testify that a confidential informant told him that "defendant was going to be going to Chicago later that evening to buy heroin and that he would be going in a certain vehicle, which was a blue Toyota Solara, and going with a female who was supposed to be his girlfriend." The court overruled defendant's objection to this statement, noting that opening statements only indicate what the State believed its evidence would show.

During Officer Batterham's testimony, he indicated that he received information from a confidential informant about defendant. The State asked Batterham to detail the circumstances surrounding his receipt of that information and defendant objected, claiming that any testimony concerning what the informant told Batterham was impermissible hearsay. The court allowed Batterham to testify that he "received information from an individual that defendant was supposed to be making a trip to Chicago that evening to pick up a large quantity of heroin." The informant told Batterham that defendant was at the Townehouse hotel and the type of vehicle that would be used.

Batterham testified that based on that information, he set up surveillance on the Townehouse hotel. He witnessed the

3

described vehicle arrive at the location, then leave minutes later with Holly Felton driving; defendant was in the front passenger seat, and the informant was in the backseat. The police followed the vehicle to Morton, then called off surveillance.

Batterham continued his testimony by noting that shortly after midnight on July 13, 2006, he received information regarding defendant. When Batterham was asked to summarize that information, defendant objected. The State claimed the information was essential to explain the officer's further conduct and the trial court overruled defendant's objection. Batterham then testified that the information he received indicated that defendant did "in fact have the heroin" and that he would be returning to the Townehouse hotel in the vehicle previously described.

During this testimony, the trial court instructed the jury that "the information the officer is testifying to that he received is allowed for the purpose of explaining the actions of the officer and not for the truth of the matter that might have been told to the officer, but to explain the officer's actions then." Batterham concluded his testimony by noting that he, again, set up surveillance at the Townehouse hotel and witnessed the described vehicle pull into the parking lot.

Officer John Couve testified that he was driving a van

4

carrying "an arrest team." He parked the van on the passenger side of the a blue Toyota in the Townehouse hotel parking lot. Defendant was opening, or had just opened, the passenger door as Couve parked.

Officer Erin Barisch testified that he was part of the arrest team at the Townehouse hotel on July 13, 2006. When he arrested defendant, the front passenger door to the Toyota was open and defendant was turned in the seat talking to the backseat passenger. Barisch stated that defendant had a purple cloth Crown Royal bag in his right hand and he dropped the bag onto his seat when he saw the officers. The cloth bag held a plastic bag containing a substance believed to be heroin, a bottle of Dormin pills, and a digital scale.

The parties stipulated that $225 was found in defendant's pocket and that no fingerprints were found on the items in the purple bag. Denise Hanley, an Illinois State Police forensic scientist, testified that the substance recovered from inside the purple bag contained heroin and weighed 7.9 grams.

Officer Batterham was qualified as an expert in narcotics investigation and then testified that, based on his opinion, the heroin was to be sold and not for personal use. Batterham came to this conclusion based on the quantity of the heroin, the presence of the digital scale, and the presence of Dormin. Batterham noted Dormin is a sleep aid used to cut heroin.

5

After putting on its expert testimony, the State rested its case. Defendant chose not to testify or put on any testimony in his defense. The jury found defendant guilty of both possession of a controlled substance and possession with intent to deliver a controlled substance. Defendant filed a timely posttrial motion, alleging error in allowing statements of the confidential information into evidence. The trial court denied defendant's motion.

ANALYSIS

Defendant raises two claims of error on appeal. Initially, defendant claims the circuit court erroneously allowed the State, during opening, to reference impermissible hearsay statements made by a confidential informant. Specifically, defendant alleges it was reversible error to allow the prosecutor to inform the jury that the police received information indicating defendant planned a trip to Chicago to buy heroin. Defendant claims the court compounded this error by allowing a police officer to testify that the confidential informant told him defendant did, in fact, purchase the heroin and was on his way back to Peoria with it. The State responds that the opening statements made by the prosecutor were proper, as was the testimony of the officer. The State notes that parties are given great latitude when making opening statements and that the officer's statements were not made to prove the truth of the

6

matter asserted but, rather, to properly explain investigatory proceedings.  Alternatively, the State proffers that any error that may have occurred was harmless.

I. Hearsay v. Nonhearsay Purpose

Defendant claims *People v. Singletary*, 273 Ill. App. 3d 1076 1333 (1995), is on all fours with the case at bar, supports his position, and belies that of the State.  In *Singletary*, the police received a tip from an informant that defendant would be driving to a specific address to pick up a package of cocaine. *Singletary*, 273 Ill. App. 3d at 1078.  The police surveilled the address, witnessed the defendant arrive as a passenger in an autombile, exit the vehicle, go into the building, and return minutes later to the vehicle.  *Singletary*, 273 Ill. App. 3d at 1079.  The police stopped the vehicle after it left the location and a drug dog alerted to narcotics under the seat in which defendant was riding.  *Singletary*, 273 Ill. App. 3d at 1079.  A police officer testified that a confidential informant told him about defendant's intentions.  The officer specifically stated that the informant provided " 'a description, a brief description of [defendant], type of auto that he would be riding in, and that he was going to go to 2971 South Dearborn and pick up a package of cocaine.' "  *Singletary*, 273 Ill. App. 3d at 1082.  The informant also provided the officer with defendant's first name. The appellate court held such testimony "went beyond what was

7

necessary to explain investigatory procedures and [was] used to establish defendant's guilt rather than explain police conduct." *Singletary*, 237 Ill. App. 3d at 1085.

Our research reveals that three reported decisions have discussed this holding from *Singletary*, and all have done so favorably. See *People v. Jura*, 352 Ill. App. 3d 1080, 1086 (2004) ("The prosecution merely needed to demonstrate that the officer was on duty, received a radio call, and as a result of that call proceeded to the alley behind 38th Street. The three police witnesses went beyond explaining the investigative steps taken by testifying to the substance of the radio call, including the description of the offender."); *People v. Williams*, 289 Ill. App. 3d 24, 34 (1997) (The court held that the State's "repeated references to" an anonymous citizen's statements to an officer in which the citizen provided the defendant's given and street names, gave a physical description of defendant and described defendant's gun, "in an effort to convince the jury of defendant's guilt[,] was error"; the *Williams* court did find it to be harmless error, however.); *People v. Rivera*, 277 Ill. App. 3d 811, 820 (1996) ("Hearsay testimony identifying the defendant as the one who committed the crime cannot be explained away as 'police procedure,' even where the trial judge limits the evidence to a nonhearsay purpose.").

In *People v. Gacho*, 122 Ill. 2d 221 (1988), our supreme

8

court acknowledged the investigatory procedure exception to the hearsay rule. The officer in *Gacho* testified that he talked to the victim "at the hospital for three or four minutes *** and he and his partner then went to Chicago to look for Robert Gacho[, the defendant]." *Gacho*, 122 Ill. 2d at 247-48. The court held such testimony was permissible but stated, "[h]ad the substance of the conversation that [the officer] had with [the victim] been testified to, it would have been objectionable as hearsay. The testimony of [the officer], however, was not of the conversation with [the victim] but to what he did and to investigatory procedure." *Gacho*, 122 Ill. 2d at 248.

Thereafter, our supreme court elaborated on its language from *Gacho* in *People v. Jones*, 153 Ill. 2d 155 (1992). The State convicted the *Jones* defendant of armed robbery and aggravated unlawful restraint. *Jones*, 153 Ill. 2d at 157. The *Jones* victim testified that two armed men, one being the defendant, forced her into her car at gunpoint, drove her to an alley, stole her possessions then ordered her out of the car and drove away with her car. *Jones*, 153 Ill. 2d at 158. An officer testified that he received a report of a car stripping in progress, and when officers arrived on the scene, two men were stripping the victim's car. *Jones*, 153 Ill. 2d at 159. The men ran and one was captured while the other escaped. Officers' testimony made it clear that they learned defendant's name after speaking with

9

the man they apprehended, named Colvin, the night of the car stripping. *Jones*, 153 Ill. 2d at 159. The *Jones* defendant claimed the officers' testimony constituted impermissible hearsay.

Our supreme court disagreed, and in doing so stated as follows:

> "It is undisputed that an officer may testify to his investigatory procedures, including the existence of conversations, without violating the hearsay rule. This is true even if a logical inference may be drawn that the officer took subsequent steps as a result of the substance of that conversation. [Citation.]

> The defendant argues that the testimony in this case exceeds that allowed by *Gacho*, since [the officers] testified to the substance of Colvin's statements. *Gacho* stated that, '[h]ad the substance of the conversation *** been testified to, it would have been objectionable as hearsay.' [Citation.] However, this language is not applicable to the facts of this case.

> In *Gacho*, the defendant was convicted

10

of murder, aggravated kidnapping, and armed robbery, and was sentenced to death. The defendant challenged the sufficiency of his trial, *inter alia*, because of alleged hearsay in a police officer's testimony and improper references to this testimony during closing argument. This occurred when the officer, while detailing his investigation, testified to a conversation he had with the surviving victim in which the victim identified the defendant as the perpetrator of the crime.

This is the dispositive factual difference between *Gacho* and the instant case. In *Gacho*, the substance of the conversation would have gone to the very essence of the dispute: whether the defendant was the man who committed the crime. Thus, if the substance of the conversation came into evidence it would inevitably go to prove the matter asserted.

The substance of the conversations with Colvin, on the other hand, could in no way go to prove any matter relevant to the trial. If offered to prove the matter asserted, the testimony would show that the defendant was

11

involved in the car stripping, or at least present at the scene.  This provides nothing to the State to help prove the defendant's guilt in the armed robbery.  Rather, this simply showed the jury how the officer and the detective came to suspect the defendant."

*Jones*, 153 Ill. 2d at 159-61.

In the case at bar, however, the alleged improper statements go directly to the matter in controversy: whether defendant possessed the heroin found in the vehicle.  Undoubtedly, the prosecution could have elicited testimony from Officer Batterham that explained his investigatory procedures without disclosing the substance of the conversations had between the officer and the informant and without hearsay as to defendant's guilt.  By way of explanation, the prosecutor could have simply elicited testimony from the officer that a confidential informant (CI) provided information that at the time and place in question, a blue Toyota Solara would appear with three occupants and the vehicle would contain drugs.  This would explain why the officers were at the Townehouse hotel and why they stopped defendant's vehicle.  There was no need to go beyond that if the only goal was to explain police conduct.

There is another reason we cannot accept the prosecutor's stated reason for offering the disputed testimony.  The testimony

12

elicited by the prosecutor clearly identified the CI to the defendant. (Hint: it was the guy in the backseat.) It strains our credulity to accept that this was anything more than a prosecutor's successful attempt to put on the not-so-confidential informant's testimony as to defendant's guilt without subjecting the witness to cross-examination and impeachment. The CI's shopping trip to the heroin store with defendant on the day in question provided fertile ground for cross-examination. We cannot reconcile telling the defendant who dropped the dime on him while arguing that the snitch is a CI. The prosecutor was clearly not worried about protecting the CI's identity. One would not have to be a cynic to conclude that the State did not call the witness because it did not want the witness exposed to cross-examination.

In discussing the issue before us, the Fourth District in *People v. Cameron*, 189 Ill. App. 3d 998 (1989), favorably cited the following language from Professor McCormick's treatise on evidence:

" 'In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted "upon information

13

received," or words to that effect, should be sufficient. Nevertheless, cases abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted. The need for the evidence is slight, the likelihood of misuse great.' " *Cameron*, 189 Ill. App. 3d at 1004 (quoting Kenneth S. Brown, *et al.*, McCormick on Evidence §249, at 734 (Edward W. Cleary ed., 3d ed. 1984)).

The court went on to suggest:

"When an objection was first raised to [the officer's] testifying about what he was told by the confidential informant, the court should have conducted a hearing out of the presence of the jury to determine both the *scope* of these third-party out-of-court statements and the *need* for the jury to hear them. Had such a hearing been conducted in this case, the court could have directed that the improper portions of [the officer's] testimony be deleted, thereby permitting the State to provide its legitimate

14

> explanations for police conduct, while protect-
> ing the defendant against prejudicial hearsay
> statements." (Emphasis in original.) *Cameron*,
> 189 Ill. App. 3d at 1005.

Courts cite *Cameron* with approval. See, *e.g.*, *People v. Singletary*, 273 Ill. App. 3d 1076 (1995); *People v. Warlick*, 302 Ill. App. 3d 595 (1998). When faced with the prospect of hearsay testimony to explain police conduct, a brief *Cameron* hearing makes perfect sense. The hearing, outside the presence of the jury, need only take a few minutes. The court could simply ask the prosecutor, What witness (CI or otherwise) testimony do you intend to elicit through a police officer to explain police conduct? The prosecutor answers and then the court can quickly decide how much of that is actually necessary to explain why the police did what they did and exclude unduly prejudicial testimony that the jury might reasonably misuse to determine the defendant's guilt. This very brief process will protect both the State's right to explain to a jury why the police did what they did in any given circumstance and, at the same time, protect a defendant's right to a fair trial and his or her right not to be convicted with the use of incompetent hearsay. An explanation by the prosecutor that he or she is only offering the testimony to show why police officers did what they did should not be the end of the discussion.

15

The testimony elicited by the prosecutor went far beyond that necessary to explain police conduct. Therefore, it was hearsay. We hold the trial court erred by overruling defendant's objections. We further find that the trial court's limiting instruction to the jury did not cure the error and agree with the *Rivera* court's statement that, in this instance, the "[h]earsay testimony identifying the defendant as the one who committed the crime cannot be explained away as 'police procedure,' even where the trial judge limits the evidence to a nonhearsay purpose." *Rivera*, 277 Ill. App. 3d at 820. The limiting instruction was only given in response to the testimony that defendant had acquired the heroin and was on his way back from Chicago. No limiting instruction was given in response to the testimony that "defendant was going to be going to Chicago later that evening to buy heroin."

## II. Harmless Error

The State argues that even if we find the trial court erred by allowing the statements into evidence, the error was harmless. The admission of hearsay evidence is harmless error where there is no reasonable probability that the jury would have acquitted defendant absent the hearsay testimony. *People v. Sims*, 192 Ill. 2d 592 (2000); *People v. Nevitt*, 135 Ill. 2d 423 (1990). The State notes that it is undisputed that the substance contained within the purple cloth Crown Royal bag contained heroin and that

16

Officer Barisch's testimony indicating he witnessed defendant holding that bag is uncontradicted. Therefore, the State submits, even had the informant's statements been excluded, there is no reasonable probability that the jury would have acquitted defendant. We agree. It is undisputed that the police caught defendant literally "holding the bag."

Defendant offers no plausible explanation of why this error is anything but harmless. Defendant simply claims it cannot be harmless given the fact that the testimony "went straight to the heart of the guilt or innocence of defendant and therefore should not be considered harmless." However, defendant cites no authority for this proposition and fails to comment on the true standard to be applied when determining whether introduction of such statements is harmless: is there a reasonable probability that a jury would have acquitted absent the hearsay testimony. Our research failed to identify a single case, and defendant cites none, that holds hearsay testimony that comments directly on the matter at issue cannot be harmless error.

### III. Supreme Court Rule 431

Finally, defendant claims the trial court failed to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) and, as such, he is entitled to a new trial. The State responds that defendant has forfeited this issue. In the alternative, the State argues the trial court properly complied with Rule 431(b).

17

We review issues concerning the compliance with a Supreme Court Rule *de novo*. *People v. Graham*, 393 Ill. App. 3d 268 (2009); *People v. Reed*, 376 Ill. App. 3d 121 (2007).

Rule 431(b) states as follows:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her ***.
>
> The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

The record indicates the trial court announced these principles to the entire jury venire. Then, while announcing the final principle, the court stated, "He [the defendant] is not

18

required to testify, and if he does not do so, that cannot be used against him.  All jurors must be willing to accept this basic principle."  Defendant acknowledges that, "in one form or another," the court asked all but one juror individually if they accepted the principles of law outlined in Rule 431(b).  The State acknowledges that the court failed to ask juror Krishnamoorthi whether or not he accepted these four basic principles of law.  The State argues, however, that defendant has forfeited this alleged error.  We agree.

To properly preserve an issue for appellate review, the defendant must object at trial and raise the issue in a posttrial motion.  *People v. Allen*, 222 Ill. 2d 340 (2006).  "The violation of a Supreme Court Rule does not mandate reversal in every case ***."  *People v. Glasper*, 234 Ill. 2d 173, 193 (2009).  Defendant failed to object to the manner in which the trial court conducted *voir dire*.  Thus, the issue has been forfeited.

Nevertheless, defendant asks that we review the matter as plain error.  "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."  Ill. S. Ct. R. 615(a) (eff. Aug 27, 1999).  Under this rule, a reviewing court is permitted to consider a forfeited issue where: (1) the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence; or (2) the error is

19

so serious that the defendant was denied a substantial right, and thus a fair trial. *People v. Herron*, 215 Ill. 2d 167 (2005). As noted above, the evidence in this matter was not closely balanced. Moreover, we find the alleged error was not so serious that defendant was denied a fair trial.

In *People v. Amerman*, 396 Ill. App. 3d 586 (2009), this court was called upon to analyze a similar situation regarding Rule 431(b) admonishments. The trial court in *Amerman* did not strictly comply with Rule 431(b) as it failed to ask all potential jurors if they understood and accepted the principle that the defendant's failure to testify could not be used against him. *Amerman*, 396 Ill. App. 3d at 588. In reviewing the matter, we stated:

> "In this case, the jurors were instructed of the Rule 431(b)(4) principles prior to their deliberations, albeit not in the proper manner. As the supreme court stated in *Glasper*, '[w]e reject the idea that the trial court's failure to conduct Rule 431(b)(4) questioning makes it inevitable that the jury was biased,' particularly where the record demonstrates that the jury was instructed of the principles before its deliberations. [Citation.] 'To do so would require us to presume that citizens sworn as

20

jurors ignore the law and the jury instructions given to them. This notion is contrary to our precedent which instructs us to make the opposite presumption.' " *Amerman*, 396 Ill. App. 3d at 594-95 (quoting *Glasper*, 234 Ill. 2d at 201).

We further noted in *Amerman* that the alleged error was not "so serious that it affected the fairness of the defendant's trial" and ultimately held "that the trial court in this case did not commit plain error under either prong of the rule by failing to strictly comply with Rule 431(b). The failure to follow a supreme court rule in this case, standing alone, was not *per se* plain error. [Citations.]" *Amerman*, 396 Ill. App. 3d at 595.

Similarly, in the case at bar, the jurors were instructed on the Rule 431(b) principles prior to their deliberations. Not only were they instructed *en masse* during *voir dire* as to the four principles, but all but one were individually instructed and asked if they accepted the principles. The record indicates that the entire jury venire was in the court room when the trial judge first stated the Rule 431(b) principles and indicated that each juror "must be willing to accept" them. Then, the court called groups of four jurors to the jury box for questioning. There is no notation in the record that the remaining prospective jury members were asked to leave the courtroom during this questioning.

21

While juror Krishnamoorthi was not individually asked if he accepted the four principles set forth in Rule 431(b), the record indicates that juror Krishnamoorthi heard the judge instruct at least seven other jurors individually on these principles and ask those jurors if they accepted the principles. Moreover, before deliberations began, the trial court instructed the jury as follows:

> "The fact that the defendant did not testify must not be considered by you in any way in arriving at your verdict. ***
>
> The defendant is presumed to be innocent of the charges against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in this case you are convinced beyond a reasonable doubt that he is guilty.
>
> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence."

Not only did the trial court verbally instruct the jurors as to these principles, but it gave them written instructions on

22

these principles to take with them into deliberations.  As we found in *Amerman*, while the trial court failed to strictly comply with Rule 431(b), we find its failure to do so did not deprive the defendant of a fair trial.  As the evidence in this case is not closely balanced, we hold that defendant cannot meet his burden of showing the trial court committed plain error and, as such, we must honor his procedural default.

Our findings with regard to defendant's claims involving Rule 431(b) are supported by *Thompson*.  *Thompson*, 238 Ill. 2d at 615.  The *Thompson* court held that failure to strictly comply with Rule 431(b)'s mandated "question and response process" does not "rise to the level of structural error" and, therefore, "does not require automatic reversal of defendant's conviction." *Thompson*, 238 Ill. 2d at 607-11.  When faced with a scenario in which defendant failed to object below or demand strict compliance with Rule 431(b), therefore forfeiting appellate review of the matter, the proper path of analysis is to determine whether the trial court's failure to strictly comply with the rule equated to plain error.  *Thompson*, 238 Ill. 2d at 611-12. The venire in *Thompson* "received some, but not all, of the required Rule 431(b) questioning.  The venire was also admonished and instructed on Rule 431(b) principles."  *Thompson*, 238 Ill. 2d at 615.  While the trial court in *Thompson* instructed all the jurors as to the principles of proof beyond a reasonable doubt

23

and the presumption of innocence, it did not inquire as to whether any of the jurors accepted those principles. *Thompson*, 238 Ill. 2d at 602. Furthermore, the trial court failed to ask the potential jurors if they understood that the defendant need not present any evidence although it did instruct them that under "the presumption of innocence, the defense need not present any evidence." (Internal quotation marks omitted.) *Thompson*, 238 Ill. 2d at 602. Despite the trial court's failure to strictly comply with Rule 431(b), our supreme court held defendant did not meet his "burden of showing the error affected the fairness of his trial and challenged the integrity of the judicial process. Accordingly, the second prong of plain-error review does not provide a basis for excusing defendant's procedural default." *Thompson*, 238 Ill. 2d at 615.

In the instant case, the trial court failed to properly question one juror, yet the entire venire was properly admonished as to the Rule 431 principles. The evidence was not closely balanced and defendant has failed to show that the trial court's error resulted in a biased jury.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

24