(No.77464.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ERIC D. DANIELS, Appellant.

*Opinion filed March 21, 1996.—Rehearing denied June 3, 1996.*

HARRISON, J., took no part.

Charles M. Schiedel, Deputy Defender, and Timothy M. Gabrielsen, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield, and Thomas J. Difanis, State's Attorney, of Urbana (Barbara E. Preiner, Solicitor General, and Arleen C. Anderson and Steven R. Splitt, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Defendant, Eric D. Daniels, appeals from his conviction and death penalty sentence, contending that he was denied a fair trial because he was allowed only seven peremptory challenges to prospective jurors instead of the 14 specified for capital cases under Supreme Court Rule 434(d) (134 Ill. 2d R. 434(d)). Defendant also argues that the trial court compounded its error by refusing to excuse for cause a prospective juror who knew and had experience with the lead prosecutor in defendant's trial. The same prosecutor helped to obtain the conviction of a person accused of sexually assaulting that venire member's children. The trial court in the case at bar refused to excuse the challenged venire member for cause; accordingly, defense counsel was compelled to exercise one of his peremptory challenges against the venire member. Because we agree that defendant was entitled to 14 peremptory challenges under Rule 434(d) and that the court's refusal to allow the greater number of challenges constituted reversible er-

ror under the circumstances of this case, we reverse and remand for new trial.

## BACKGROUND

Defendant was convicted of a 1993 murder, aggravated criminal sexual assault, and armed robbery that took place at the Charter House Inn in Champaign, Illinois. The victim of the attack, Michelle Davis, was working at the motel as night clerk. In the early morning hours of July 22, 1993, Davis' nude body was discovered. The cash register was empty. Shotgun pellets and wadding were found at the crime scene and in the victim's fatal wounds. The autopsy revealed evidence of sexual intercourse and trauma to the victim's vagina. DNA testing indicated that blood spots found on defendant's clothing were consistent with the victim's genetic profile. Semen samples recovered from the victim's body were tested. The results indicated that the semen could have come from defendant or the victim's boyfriend, who testified to having engaged in consensual sexual intercourse with Davis at approximately 6 p.m. on the evening of July 21, 1993.

In the course of the police investigation, officers arrested defendant and searched his apartment. There, police found two shotguns and a box of shotgun shells. Defendant claimed he had found the guns on July 22, 1993. The weapons were found to be in working order, but a forensic scientist testified at trial he could neither identify nor eliminate either shotgun as having fired the shots recovered at the crime scene. However, evidence indicated that the shot pellets taken from Davis' body were manufactured from the same batch of lead as the shot pellets taken from defendant's apartment.

Defendant admitted going to the Charter House Inn the evening before and the morning of the homicide. According to defendant, the victim consented to having sexual intercourse with him during the evening of July

21 while she was on duty. Defendant claimed he then left, planning to return later to rob the motel, and when he did return, at approximately 5 a.m. on July 22, he gained entry through an unlocked basement door. Defendant said he met a man known to him as "T," with whom defendant discussed robbing the motel. Defendant claimed that "T" instead ordered defendant to leave. According to defendant, he left the motel without participating in any criminal activity.

The jury returned verdicts of guilty on all charges. The trial court found defendant eligible for the death penalty because the murder of Davis occurred in the course of aggravated criminal sexual assault and armed robbery. After a hearing in aggravation and mitigation, the trial court sentenced defendant to death for the first degree murder conviction and to concurrent extended terms of 60 years' imprisonment for the other convictions. Notice of appeal was timely filed.

## ANALYSIS

### I

Defendant argues that he was denied a fair trial and due process of law because the trial court permitted him only seven peremptory challenges rather than the 14 challenges required in capital cases by Supreme Court Rule 434(d). In response, the State argues that because defendant waived his right to a jury for the sentencing phase of trial at the time of the *voir dire*, the instant cause is not a "capital case" within the meaning of our Rule 434(d).

Rule 434(d) provides, in pertinent part:

"A defendant tried alone shall be allowed 14 peremptory challenges in a capital case, 7 in a case in which the punishment may be imprisonment in the penitentiary, and 5 in all other cases ***." 134 Ill. 2d R. 434(d).

Defendant contends that this rule clearly and unambiguously entitles an accused in his position to exercise

14 peremptory challenges; therefore, no exceptions, limitations, or conditions should be read in. See, *e.g.*, *People v. Goins*, 119 Ill. 2d 259, 265 (1988). According to defendant, a capital case does not lose its character as a death penalty prosecution simply because the defendant waives his or her right to have a jury determine if the death penalty should be imposed. Defendant further states that numerous defendants on trial in capital cases in Illinois have retained the right to the greater number of peremptory challenges despite having entered pretrial waivers of the jury for sentencing. In support, defendant includes in his brief a listing of eight death penalty cases from three counties in which the trial courts granted either the 14 peremptories allowed by our rule or the 20 peremptories allowed by section 115—4(e) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—4(e) (West 1992)), notwithstanding the defendants' waiver of the jury for sentencing. According to defendant, such consistent practice in the trial courts of Illinois is "a testament to the rule's clarity."

The State, in contrast, argues that this court should adopt the rationale of three appellate decisions which hold that if the defendant in a death penalty case waives the jury for sentencing, the matter ceases to be a "capital case" for purposes of allowing the greater number of peremptory challenges. *People v. Wolfe*, 144 Ill. App. 3d 843 (1986); *People v. Jang Han Bae*, 176 Ill. App. 3d 1065 (1988); *People v. Allen*, 184 Ill. App. 3d 438, 446 (1989).

In *Wolfe*, *Jang Han Bae*, and *Allen*, the defendants executed pretrial waivers of the jury for sentencing. Thereafter, the trial courts limited the defendants to the number of peremptory challenges allowed in cases punishable by imprisonment rather than death. In *Wolfe* and *Jang Han Bae*, the appellate panels construed section 115—4(e) of the Code of Criminal Procedure, the

statutory provision that permits defendants who are tried alone to exercise 20 peremptory challenges in capital cases and 10 challenges in cases punishable by imprisonment. In *Allen*, the appellate panel considered the application of Supreme Court Rule 434(d), which was amended in 1985 to provide for 14 peremptory challenges in a capital prosecution and seven in cases punishable by imprisonment.[1]

In *Wolfe*, the court upheld the trial court's decision to limit defendant to the lower number of peremptory challenges on *voir dire*, reasoning that because defendant waived the jury for sentencing, the jury would play no role in imposing capital punishment. In support of its holding, the court relied on its earlier decision in *People v. Nathaniel*, 103 Ill. App. 3d 610 (1981). In *Nathaniel*, a convicted defendant argued on appeal that the trial court committed reversible error during jury selection by allowing defendant only half of the peremptory challenges permitted for capital trials under the pertinent statute. In rejecting the defendant's argument, the appellate panel in *Nathaniel* noted that the trial court had declined the State's pretrial request to conduct *voir dire* under the guidelines of *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770 (1968). The State did not thereafter pursue the issue or seek the death penalty; subsequently, defendant was sentenced to a term of imprisonment. The appellate panel in *Nathaniel* expressed its belief that the trial

---

[1]Defendant notes in his brief that in *People v. Peeples*, 155 Ill. 2d 422 (1993), a death penalty case affirmed on direct appeal and currently pending on post-conviction proceedings, defendant argued he was entitled to the 20 peremptory challenges allowed in the statute. The State argued that the statute was preempted by Supreme Court Rule 434(d) and the trial court agreed. We express no opinion on the preemption issue, as it was not raised in this appeal and is not necessary for the resolution of the issues presented.

court had "removed the possibility" that defendant could be sentenced to death by refusing to *Witherspoon* the jury. Consequently, the appellate panel held that the cause was no longer a "capital case" within the meaning of the statute. Because the defendant did not face the possibility of capital punishment under the peculiar circumstances in that case, the *Nathaniel* court held that defendant was not prejudiced by the trial court's allowance of the lower number of peremptory challenges available in noncapital cases.

In *Wolfe*, as in *Nathaniel*, the defendant requested a jury for trial but waived the jury for sentencing, and the trial court accordingly limited defendant to the number of peremptory challenges allowed under section 115—4(e) of the Code of Criminal Procedure for noncapital felony cases. However, unlike the situation in *Nathaniel*, the prosecutors in *Wolfe* sought the death penalty and pursued a capital sentencing hearing against defendant, who was then sentenced to imprisonment. On appeal, the defendant challenged the number of peremptory challenges he was allowed during *voir dire*, arguing that he was a capital defendant entitled by statute to the higher number of peremptory challenges. The appellate panel in *Wolfe* disagreed, citing the rationale and result in *Nathaniel* as guidance for its interpretation of the peremptory challenges statute. The court in *Wolfe* did not find significant the fact that the prosecutors in the case before it pursued the death penalty after defendant waived the jury for sentencing, stating, "We see no reason for a different conclusion here [from that reached in *Nathaniel*], merely because the State continued to seek death punishment from the court after the trial judge respected defendants' voluntary waiver of jury questioning, particularly where, as here, the death penalty was never applied." *Wolfe*, 144 Ill. App. 3d at 851. In *dicta*, the court added, "Further,

we believe that in a situation such as the instant one, where it is no longer within the jury's province to sentence a defendant to capital punishment, the rationale behind the statute granting a greater number of peremptory challenges in a capital case simply does not apply." *Wolfe*, 144 Ill. App. 3d at 851.

The courts in *Jang Han Bae* and *Allen* expressly followed *Wolfe* in ruling that capital defendants who waive the jury for sentencing are only entitled to the number of peremptory challenges allowed in noncapital felony cases. In the case at bar, the State requests this court to construe Rule 434(d) in accordance with the rationale of *Wolfe, Jang Han Bae* and *Allen* and hold that, despite the fact that defendant was sentenced to death, his waiver of the sentencing jury converted this case into a noncapital trial for purposes of allotting peremptory challenges for use in jury selection.

We reject the State's proposed construction of Rule 434(d). Our rule does not contain the restriction read into it by the appellate panels in *Wolfe, Jang Han Bae* and *Allen*. Our rule does not implicitly or inherently suggest that the characterization of "a capital case" depends on whether the defendant waives a jury for sentencing. On the contrary, we believe that a case must be viewed as a capital one if the offenses charged render defendant potentially subject to the death penalty upon conviction. Although the sentencing phase of a capital case determines whether the defendant will receive the death penalty, it is the outcome of the guilt or innocence phase of trial that determines whether there will be a sentencing hearing. It follows that the jury which convicts the defendant of a crime that renders him or her potentially subject to the death penalty has decided a crucial aspect of a *capital* case, regardless of whether a jury or the trial judge determines the sentence and whether the death sentence is imposed. It is the pos-

sibility that death will be imposed that defines a capital case, not whether the jury is waived for the sentencing hearing.

Rule 434(d) reflects the policy determination that a criminal defendant whose life is at risk because of his or her eligibility for imposition of capital punishment should be permitted significantly more peremptory challenges than would be available in a noncapital case in which the defendant would be subject to a sentence of imprisonment only. As a general rule of construction, if there is an ambiguity in a rule or statute pertaining to criminal matters, such ambiguity must be resolved in favor of the defendant. *E.g., People v. Foster*, 99 Ill. 2d 48 (1983); *People v. Rideout*, 193 Ill. App. 3d 884 (1990) (applying principles of statutory construction to supreme court rules). When the language of a statute or a supreme court rule is plain and unambiguous, courts will not read in exceptions, limitations, or other conditions. See *People v. Goins*, 119 Ill. 2d 259 (1988). In our view, the terms of Rule 434(d) are not ambiguous: "A defendant tried alone shall be allowed 14 peremptory challenges in a capital case ***." 134 Ill. 2d R. 434(d). Nothing in the rule suggests that a death penalty prosecution is converted into a noncapital case simply because the defendant waives the jury for sentencing. The trial court's application of Rule 434(d) in a capital case therefore must be made on the basis of whether defendant will be at risk for capital punishment if he or she is convicted at trial, not whether or not the jury is waived for sentencing. Accordingly, we reject the State's argument that defendant's criminal prosecution lost its character as a capital case by defendant's waiver of the sentencing jury. We hold that in all cases in which a defendant may be eligible for the death penalty upon conviction of the crimes charged, the case is properly viewed as a capital case for purposes of Rule 434(d), ir-

respective of whether defendant waives his right to a jury for the death eligibility or the aggravation and mitigation phase of sentencing.[2] In the instant case, defendant was tried alone in a capital case and therefore should have been accorded 14 peremptory challenges pursuant to this court's rule. The trial court erred in construing Rule 434(d) as limiting defendant to seven peremptory challenges. To the extent that the opinions in *Wolfe, Jang Han Bae,* and *Allen* hold that defendants in capital cases who waive the jury for sentencing automatically lose the right to the greater number of peremptory challenges allowed in capital trials, those cases are overruled.

## II

We next decide whether defendant is entitled to a new trial as a result of the trial court's erroneous construction of Rule 434(d). According to the State, defendant is not entitled to a new trial unless he establishes that he was prejudiced by the trial court's ruling. Defendant, however, contends that a showing of actual prejudice is not required, citing *Swain v. Alabama*, 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824 (1965), and *People v. Moss*, 108 Ill. 2d 270 (1985). According to defendant, prejudice is presumed under the standard set out in *Swain* and *Moss*.

*Swain* held that prejudice need not be shown when

---

[2]In our recent case of *People v. Brown*, 169 Ill. 2d 132 (1996), we held that a defendant who waives the jury for trial cannot be compelled to simultaneously submit a jury waiver for the sentencing phase of trial. A defendant may waive the jury for trial but elect to have a jury determine sentencing. Because the State is not required to give notice of its intention to seek the death penalty before defendant's conviction, we found it "incongruous to allow the defendant to be forced into deciding, pretrial, whether he wishes to have a jury for death sentencing." *Brown*, 169 Ill. 2d at 160.

there is a "denial or impairment" of the right to peremptory challenges. The Court stated that the peremptory challenge is "one of the most important of the rights secured to the accused" in our criminal justice system because the challenge eliminates "extremes of partiality on both sides" and assures the parties that the case will be decided on the basis of evidence placed before the jurors. *Swain*, 380 U.S. at 219, 13 L. Ed. 2d at 772, 85 S. Ct. at 835, quoting *Pointer v. United States*, 151 U.S. 396, 408, 38 L. Ed. 208, 214, 14 S. Ct. 410, 414 (1894). In *Batson v. Kentucky*, 476 U.S. 79, 98-99, 90 L. Ed. 2d 69, 89, 106 S. Ct. 1712, 1724 (1986), the Court again acknowledged the important role peremptory challenges occupy in our trial procedures and held that, as a constitutional matter, peremptory challenges may not be used to exclude potential jurors based solely on race. In *Moss* this court cited *Swain* and stated, "The denial or impairment of the peremptory right is reversible error without a showing of prejudice to the defendant." *Moss*, 108 Ill. 2d at 276. This court further observed that the right to peremptory challenges is not denied or impaired "if the procedure affords both parties fair opportunity to detect bias or hostility on the part of prospective jurors, and if the procedure allows both parties a fair chance to peremptorily excuse any venireman." *Moss*, 108 Ill. 2d at 276. We conclude that when the requisite showing of denial or impairment is established under the authority of *Swain* and *Moss*, prejudice to defendant's right to a fair trial may be presumed.

We decline to adopt a *per se* rule holding that reversible error occurs whenever a trial court has reduced the number of peremptory challenges available to the defendant by our rule in capital cases. For example, if the trial court limits a defendant to fewer peremptories than the number allowed by rule but the defendant does

not object and fails to use all of the peremptories allowed to him, reversible error would not occur, because in such circumstances the defendant's right to peremptory challenges would not have been denied or impaired within the meaning of *Swain* and *Moss*. See *People v. Garcia*, 165 Ill. 2d 409, 427 (1995) (defendant in capital case waived issue regarding trial court's denial of 14 peremptory challenges and, having failed to use the seven allowed to her during jury selection, did not establish prejudice to her right to a fair trial).

In view of the recognized importance of peremptory challenges in furthering the goals of achieving a fair trial and impartial jury, we conclude that a capital defendant who is not allowed the full number of peremptory challenges granted by our rule may be entitled to a new trial if defendant adequately preserves the error by making an appropriate and timely request for the full number of peremptories, if defendant uses all of the peremptory challenges allowed by the court, and if defendant brings to the trial court's attention during *voir dire* facts relevant to defendant's claim that he or she would have exercised additional peremptory challenges against one or more jurors had additional challenges been allowed. The existence of such circumstances may establish the denial or impairment of the defendant's right to peremptory challenges, entitling the defendant to a new trial. The determination of whether the denial or impairment of a defendant's rights has been established, and therefore whether a new trial must be granted, will depend upon the specific facts of each case.

In the case at bar, defendant requested the full 14 peremptory challenges but was allowed only half that number. Defendant renewed his request after the court refused to excuse for cause a prospective juror, Neta Blackburn. During *voir dire*, Blackburn was asked whether she knew anyone in the Champaign County

State's Attorney's office. She replied, "Not that I know of." The court asked whether she or any family member had been a victim of crime or involved in a criminal prosecution. Blackburn replied that her children had been sexually assaulted. Upon further questioning by defense counsel, Blackburn revealed that there had been a successful criminal prosecution of the person who assaulted her children and that one of the assistant State's Attorneys involved in her children's case was Heidi Ladd, who was the lead prosecutor in defendant's case.

During a side bar conference, defense counsel requested the removal of Blackburn for cause based on her relationship with Assistant State's Attorney Ladd. The court declined to excuse Blackburn for cause. Accordingly, defense counsel exercised what appears from the record to have been the last of his seven peremptory challenges to dismiss her. At that time, defense counsel also requested the court to reconsider its previous ruling and to grant defendant the 14 peremptory challenges provided by supreme court rule or the 20 allowed by statute. In furtherance of his request, counsel named Tami Cain and Aaron Binford as two jurors he would have excluded by peremptory challenge had he been permitted the greater number of challenges at the outset. The record indicates that venireperson Cain stated during *voir dire* that her father was a retired police officer and that her uncle was an active police officer in Champaign. She said she "possibly" would evaluate the testimony of police officers differently than the testimony of someone else. Venireperson Binford expressed concern that he would be unable to erase from his mind the media coverage of the murder in the case at bar. Ultimately defendant accepted Cain and Binford as jurors. However, defense counsel informed the trial court at a side bar conference during jury selection that he would have used peremptory challenges to dismiss

the two, and possibly others, had he been granted the full complement of 14 challenges. The record also indicates that defendant had used his final peremptory challenge before juror Cain was questioned.

In light of the above circumstances, we conclude that the trial court's erroneous restriction upon defendant's right to 14 peremptory challenges amounted to such denial or impairment of his rights as to constitute reversible error. Defendant twice requested but was denied the full number of challenges allowed by Rule 434(d). The seven challenges allowed to defendant were further reduced by one when the trial court declined to dismiss Blackburn for cause, necessitating defendant's exercise of a peremptory challenge. Defendant also identified two jurors he would have excused had he been granted the correct number of peremptory challenges. Based on these facts, we hold that defendant is entitled to a new trial.

Because of our disposition of this appeal, we need not decide other issues raised, including defendant's equal protection and eighth amendment challenges to the trial court's ruling on the number of peremptory challenges. We limit our holding to the construction of Rule 434(d) as determined herein and the conclusion that the trial court committed reversible error under the facts of this case. We note that defendant has not expressly challenged the sufficiency of the evidence of his guilt, and we observe that the evidence in the record is sufficient to support the convictions and sentences. Consequently, there is no double jeopardy impediment to a new trial and capital sentencing hearing. See *Brown*, 169 Ill. 2d at 169. We do not, however, imply that we have made any findings regarding defendant's guilt or other issues that would be binding on remand. See *People v. McDonald*, 125 Ill. 2d 182, 202 (1988).

Finally, we reject defendant's two challenges to the

constitutionality of the Illinois capital sentencing statute. Defendant argues that the statute violates the eighth and fourteenth amendments by placing the burden of proof on defendant to establish mitigating evidence "sufficient to preclude" the death penalty. This court has rejected the same claim in many prior opinions (*e.g., People v. Edgeston*, 157 Ill. 2d 201, 247 (1993)), and we will not now reconsider the issue. Similarly, we have rejected on numerous occasions the argument that the statute fails to include sufficient safeguards to prevent arbitrary and capricious death penalty decisions. See, *e.g., Edgeston*, 157 Ill. 2d at 247. We are not persuaded to revisit the issue, and we decline to reverse the controlling precedents.

For the foregoing reasons, we reverse defendant's convictions and sentences and remand this cause to the circuit court for new trial.

*Judgment reversed;*
*cause remanded.*

JUSTICE HARRISON took no part in the consideration or decision of this case.