No. 3–08–0071

Filed December 7, 2009

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07–CF–221 |
| DUSTIN M. AMERMAN, | ) ) | Honorable Michael E. Brandt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE CARTER delivered the opinion of the court:

A jury found the defendant, Dustin M. Amerman, guilty of attempted armed robbery (720 ILCS 5/8--4(a), 18–2 (West 2006)) and aggravated battery (720 ILCS 5/12--4(a) (West 2006)). The trial court sentenced him to consecutive prison terms of 11 years for the robbery offense, and an extended term of 8 years for the battery offense. On appeal, the defendant argues that the trial court erred by: (1) failing to conduct an adequate jury voir dire under Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007); and (2) imposing an extended-term sentence for aggravated battery, which was the lesser of the two offenses. The State concurs regarding the defendant's sentencing issue. We affirm the trial court's judgments of conviction, vacate the sentence for aggravated battery, and remand for resentencing regarding that offense.

# I. BACKGROUND

The State charged both the defendant and Zachary Beintema with several offenses regarding the incident at issue. At the time of the jury <u>voir</u> <u>dire</u>, the defendant and Beintema were to be tried as codefendants. The court made the following statement to the venire panel, which covered three of the four principles contained in Rule 431(b) :

"The Indictment is merely the formal way in which a defendant is placed on trial. Under the law, each defendant is presumed to be innocent of the charges against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all of the evidence in the case, you're convinced beyond a reasonable doubt that a defendant is guilty.

The State has the burden of proving the guilt of the defendants beyond a reasonable doubt and this burden remains on the State throughout the case.

The defendants are not required to prove their innocence nor are they required to present any evidence on their own behalf. They may rely on the presumption of innocence."

Later, the court asked those venire members who became jurors whether they understood and accepted the principles that a defendant is presumed innocent and that the State must prove the defendant guilty beyond a reasonable doubt. Defense counsel asked two of those who became jurors if they understood and accepted the principle that the defendant would not be required to offer any evidence. None of the venire members who became jurors were asked if they understood and accepted the principle that the defendant's failure to testify could not be used

2

against him. After the close of the evidence and before the jury deliberations, the court instructed the jury on the four principles articulated in Rule 431(b). This was the first time during these proceedings that the jurors were instructed on the fourth principle that the defendant's failure to testify cannot be held against him. During the trial, the defendant did not raise a contemporaneous objection that the court had failed to strictly comply with Rule 431(b).

Immediately before the trial was to begin, the court announced that Beintema had pled guilty, and therefore the trial would proceed only with regard to the defendant. Witnesses testified that the incident at issue occurred in Peoria at approximately 8 p.m. on February 26, 2007, on the outdoor stairway to the second-floor apartment of Chris Allender. Prior to the event in question, Scott Pringle, his girlfriend Stephanie Allender, Stephanie's friend Dana, and Dana's friend arrived by car outside Chris's apartment. The record does not reveal either Dana's last name or the name of Dana's friend. Stephanie and Dana went into the apartment, where Chris, Selena Allender Boone, and Anthony Boone were already present. Chris, Stephanie, and Selena are siblings. Selena and Anthony are married. Pringle and Dana's friend briefly remained in the car.

Pringle testified that he exited the car and walked across the street to the home of the Allender siblings' parents, where he petted their dog. He then walked back across the street toward the stairway to Chris's apartment. At the foot of the stairs, Pringle was met by the defendant and Beintema, who asked Pringle why he was there. After Pringle explained that he was going to the second-floor apartment to get his girlfriend, he began to walk up the stairs. The defendant stepped onto the stairs, blocking Pringle's way. Pringle stepped back and said that he

3

did not want any problems. At that point, Beintema "pulled out a pistol." Initially, Beintema pointed the gun at Pringle's waist, but later pointed it at his face.

According to Pringle, both the defendant and Beintema insisted that he empty his pants pockets, which he did. Pringle explained to his assailants that he had just given his last $15 to his girlfriend. The defendant went through the pockets of Pringle's overcoat while Beintema continued to point the gun at him. Pringle again insisted that he did not have any money. Then, the defendant threw Pringle to the ground and began punching him. In response to the beating, Pringle "curl[ed] up in a ball."

Eventually, Pringle was able to get up and tell his assailants that he could get some money from the apartment upstairs. Pringle testified that one of the assailants, but he could not remember which one, warned him not to call the police. After Pringle assured his attackers that he would not call the police, they accompanied him up the stairs, with Beintema continuing to point the pistol at Pringle from behind.

Once Pringle and his assailants reached the second-floor landing, Beintema stood beside Pringle, pointing the gun at him. Either Pringle or one of the assailants knocked on the door to the apartment, but Pringle could not remember who knocked. Chris opened the door, and Beintema immediately pointed the gun at Chris's face. Chris quickly slammed the door.

Pringle testified that as Beintema began to aim the gun back toward him, Pringle ducked, grabbed Beintema's wrist, and bent Beintema's arm back. As Pringle shoved Beintema off the landing toward the stairs, the gun went off. Beintema jumped and "landed on his feet about three-quarters of the way down the stairs."

4

Pringle said that after Beintema jumped down the stairs, the defendant grabbed Pringle from behind and they engaged in a "tussle." As Pringle turned toward the door, he slipped on some ice and fell into a seated position with his back against the door. The defendant began to punch Pringle. While trying to avoid the defendant's blows, Pringle banged on the door and yelled for help.

Pringle testified that he saw Beintema coming back up the stairs toward him with the gun. As Pringle began to get up from his seated posture, Beintema struck him on the right side of his head with the gun. Pringle pushed the defendant toward the stairs, and the defendant ran down the stairs. Then Pringle fought with Beintema all the way down the stairway. At the bottom of the stairs, Pringle gained control of the gun from Beintema as they continued to fight. In the meantime, Pringle heard people coming out of the apartment and saw light coming from the apartment. Stephanie ran down the stairs and into Beintema, dislodging Beintema from the struggle with Pringle. The defendant and Beintema then walked away from the scene of the incident.

Chris testified that, after he slammed the door, he called 911. Anthony testified that he called 911. The police arrived at the scene shortly after the 911 call. At trial, police officers stated that they apprehended the defendant and Beintema. The officers brought the assailants to the scene of the incident, where Pringle identified them as his attackers. After the police interviewed Pringle, he was transported to the hospital. Officers interviewed Pringle again in the hospital. When Beintema had struck Pringle with the gun, it had opened a gash in his scalp, which required eight staples to close.

5

Police officers testified concerning the versions of events that Pringle told them when they interviewed him. These versions of events were substantially similar to the version in Pringle's testimony.

A forensic scientist testified that a bloodstain on the defendant's pants contained deoxyribonucleic acid (DNA) from at least three people. Pringle could not be excluded from contributing to the major male DNA profile, and the defendant could not be excluded from contributing to the minor profile. Beintema was excluded from having contributed to the minor profile.

Beintema testified for the defendant. Beintema acknowledged that he had been convicted of residential burglary in 2004, and both retail theft and aggravated battery in 2003. According to Beintema, the defendant had not known that he had a gun on the evening of the incident. Beintema asserted that the defendant had remained across the street from the event until Beintema and Pringle began to fight. According to Beintema, the defendant then came across the street and attempted to break up the fight.

At the conclusion of the trial, the jury found the defendant guilty of the offenses. The defendant filed a motion for a new trial, in which he did not contend that the court had failed to comply with Rule 431(b). The court denied the motion. The court imposed the sentences, as noted above. After the court denied the defendant's motion to reconsider sentence, the defendant appealed.

## II. ANALYSIS

### A. Rule 431(b) Compliance

The defendant contends that the trial court erred by failing to conduct an adequate jury voir dire under Rule 431(b). The defendant acknowledges that he did not raise this issue below, either at trial or in a posttrial motion. However, the defendant maintains that the issue was not forfeited because the defendant should not be required to object to a violation of Rule 431(b). Alternatively, the defendant argues that the court's error amounted to plain error. The State contends that the court's failure to strictly comply with Rule 431(b) was harmless because the jury was informed of all the principles prior to its deliberations and the court questioned the venire of its understanding and acceptance of the first two principles.

Rule 431(b) states the following:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

In the instant case, the record shows that the trial court apprised the jury venire of three of the principles articulated in Rule 431(b). In addition, the court asked the jurors whether they

7

understood and accepted the first and second principles. Defense counsel asked only two of the venire members, who became jurors, a question concerning the third principle. Therefore, the court did not strictly comply with the rule, which the defendant now maintains was error. However, the defendant did not object or raise the issue in a posttrial motion. To properly preserve an issue for appellate review, the defendant must object at trial and raise the issue in a posttrial motion. People v. Allen, 222 Ill. 2d 340, 350, 856 N.E.2d 349, 351 (2006). Thus, the issue has been forfeited.

The defendant claims, however, that this issue was not forfeited. The defendant argues that he was not required to object to the court's noncompliance with the rule because Rule 431(b) places the responsibility for compliance with the rule on the trial court. We are not persuaded by the defendant's argument.

Next, we consider whether we may excuse the defendant's forfeiture of this issue under the plain error rule. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a). Under this rule, a reviewing court is permitted to consider a forfeited issue "when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." People v. Herron, 215 Ill. 2d 167, 187, 830 N.E.2d 467, 479 (2005). Under the first prong, the court may consider a forfeited error "where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence." Herron, 215 Ill. 2d at 178, 830 N.E.2d at 475. Under the second prong, a reviewing court may consider a forfeited error "where the error is so serious that the defendant was denied a substantial right, and thus a fair trial." Herron, 215 Ill. 2d at 179, 830 N.E.2d at 475. In other

8

words, there are two categories of plain error in Illinois: (1) prejudicial errors, which are "errors that may have affected the outcome in a closely balanced case"; and (2) presumptively prejudicial errors, which are "errors that may not have affected the outcome, but must still be remedied." Herron, 215 Ill. 2d at 185, 830 N.E.2d at 478-79. The burden of persuasion remains with the defendant in both instances. Herron, 215 Ill. 2d at 187, 830 N.E.2d at 480.

The first step in any plain error analysis is to determine whether clear or obvious error occurred. People v. Piatkowski, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-411 (2007). The State concedes that the court erred by failing to adhere to the requirements of Rule 431(b). We agree with the parties that the trial court erred. The supreme court rules are obligations that the parties and the courts are required to follow. People v. Reed, 376 Ill. App. 3d 121, 875 N.E.2d 167 (2007). Rule 431(b) requires the court to ask each potential juror whether that juror understands and accepts four principles. See Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007. In this case, the court only asked the venire whether they understood and accepted the first two principles. Thus, the court erred.

The finding of error does not end our analysis, however. Next, we must consider whether the evidence in this case was so closely balanced that the jury's verdict may have resulted from the error. The evidence overwhelmingly showed that the defendant and Beintema attempted to rob Pringle with a gun, and after they discovered that he had nothing of value, they beat him severely. Beintema's testimony, in which his credibility was impeached by his prior convictions, did not counterbalance the State's evidence of the crimes. Thus, the evidence was not closely balanced, and, under the first prong of the Herron test, the defendant was not prejudiced by the error.

9

Next, we consider whether the court's error in this case was so serious that the defendant was denied a substantial right, and thus a fair trial. The defendant argues that the court's failure to strictly comply with Rule 431(b) violated his constitutional rights to a trial by a fair and impartial jury. U.S. Const. amends. VI, XIV; Ill. Const. 1970, art. I, §8. The State does not specifically address this issue under the plain error rule, but argues that the court's error was harmless.

The Illinois Supreme Court recently considered whether a violation of Rule 431(b)(4), as it existed at that time, required the court to presume prejudice and automatically reverse the defendant's conviction, or whether the error was subject to harmless error analysis. People v. Glasper, No. 103937, slip op. at 10 (June 18, 2009). In Glasper, the trial court had instructed the jurors concerning the four principles in Rule 431(b), but declined the defendant's request to ask them whether they understood and accepted the fourth principle. Glasper, slip op. at 9-10. The defendant in Glasper, as the defendant here, maintained "that the trial court's failure to question the venire in accordance with Rule 431(b)(4) deprived him of his six amendment right to a fair trial before an impartial jury." Glasper, slip op. at 10. We note that Glasper was a harmless error case, whereas, this is a plain error case.

The Glasper court observed that automatic reversal was only required where an error was deemed structural, that is, a systemic error that erodes the integrity of the judicial process and undermines the fairness of the proceedings. Glasper, slip op. at 16; see also People v. Davis, 233 Ill. 2d 244, 273, 909 N.E.2d 766, 782 (2009) (typical trial error does not amount to a structural defect requiring automatic reversal). For this proposition, the Glasper court cited both Herron, 215 Ill. 2d 167, 830 N.E.2d 467, which was a plain error case, and People v. Rivera, 227 Ill. 2d 1,

10

879 N.E.2d 876 (2007), which was a harmless error case. See Glasper, slip op. at 16. The Glasper court concluded that the type of error alleged by the defendant in this case was not a structural error requiring automatic reversal. See Glasper, slip op. at 18.

The Glasper court distinguished People v. Smith, 233 Ill. 2d 1, 906 N.E.2d 529 (2009), where the court "declined to conduct harmless error review of an error that involved a basic, fundamental protection provided by the six amendment of the federal constitution– the right to have a jury, rather than a judge, determine an accused's guilt." Glasper, slip op. at 12. In contrast, the error at issue in Glasper– the failure to ask a jury venire whether they understood and accepted that the defendant's failure to testify cannot be held against him– "does not involve a fundamental right, or even a constitutional protection." Glasper, slip op. at 12. Rather, the error in Glasper and the instant case "involves a right made available only by rule" of the Illinois Supreme Court. Glasper, slip op. at 12. Further, the court stated, "[t]he violation of a Supreme Court Rule does not mandate reversal in every case." Glasper, slip op. at 13. Rejecting the defendant's argument that his constitutional rights were violated by the court's error, the court acknowledged that Rule 431(b) was "designed to help ensure that defendants are tried before a fair jury"; however "we cannot say that Rule 431(b)(4) questioning is indispensable to a fair trial." Glasper, slip op. at 16. The Glasper court also recognized that it was free to determine whether, as a matter of state law, the failure to question the venire in accordance with Rule 431(b) was an error so severe that reversal was required, regardless of whether the error was structural under federal law. Glasper, slip op. at 18. The court declined to do so. Glasper, slip op. at 18. Ultimately, the court concluded that the violation of Rule 431(b)(4) did not require automatic reversal and was amenable to harmless error review. Glasper, slip op. at 18.

11

Although Glasper was a harmless error case, we find the court's discussion and rationale regarding structural error applicable to our analysis of the second prong of the Herron test. In this case, the jurors were instructed of the Rule 431(b) principles prior to their deliberations, albeit not in the proper manner. As the supreme court stated in Glasper, "[w]e reject the idea that the trial court's failure to conduct Rule 431(b) questioning makes it inevitable that the jury was biased," particularly where the record demonstrates that the jury was instructed of the principles before its deliberations. Glasper, slip op. at 19. "To do so would require us to presume that citizens sworn as jurors ignore the law and the jury instructions given to them. This notion is contrary to our precedent which instructs us to make the opposite presumption." Glasper, slip op. at 19, citing People v. Taylor, 166 Ill. 2d 414, 438, 655 N.E.2d 901, 913 (1995). The Glasper opinion also noted that in People v. Emerson, 122 Ill. 2d 411, 522 N.E.2d 1109 (1987), the supreme court "moved away from the portion of the Zehr holding which stated that the relevant questions should be covered 'in the course of interrogation on voir dire,' and that the failure to ask these questions amounts to 'prejudicial error.' " Glasper, slip op. at 16, quoting People v. Zehr, 103 Ill. 2d 472, 477-78, 469 N.E.2d 1062, 1064 (1984). Thus, we cannot say the error was so serious that it affected the fairness of the defendant's trial.

The Glasper court also emphasized that its holding was limited to the version of Rule 431(b)(4) that was in effect at the time of the defendant's trial, and that it was not holding that a Rule 431(b)(4) violation could never result in reversible error. Glasper, slip op. at 19. The only difference between the older version of the rule and the newer version was that the older version required the court to ask the questions regarding the enumerated principles only if the defendant so requested. In Glasper, the defendant so requested, and therefore the court was required to

12

give the instructions and to ask the questions. In the newer version of the rule, the court is required to give the instructions and to ask the questions regardless of whether the defendant makes such a request. Although the Glasper holding was limited to the older version of the rule, we find its analysis applicable to the current version of the rule.

Consequently, considering Glasper, we hold that the trial court in this case did not commit plain error under either prong of the rule by failing to strictly comply with Rule 431(b). The failure to follow a supreme court rule in this case, standing alone, was not per se plain error. See Glasper, slip op. at 18-19; People v. Houston, 226 Ill. 2d 135, 152, 874 N.E.2d 23, 34 (2007); People v. Daniels, 172 Ill. 2d 154, 165, 665 N.E.2d 1221, 1226 (1996); see also People v. Enis, 163 Ill. 2d 367, 404, 645 N.E.2d 856, 873 (1994). We recognize that our decision on this matter differs from the post-Glasper decisions of other districts of our appellate court. See People v. Arredondo, No. 1-07-2825 (1st Dist. October 8, 2009); People v. Madrid, No. 1-08-0324 (1st Dist. October 8, 2009); People v. Blair, No. 2-07-0862 (2d Dist. September 29, 2009); People v. Wilmington, No. 1-07-2518 (1st Dist. September 24, 2009); People v. Graham, 393 Ill. App. 3d 268 (2009). We respectfully reject the analysis in those cases, based upon Glasper for the reasons set forth above.

### B. Aggravated Battery Sentence

The defendant submits that the trial court erred by imposing an extended-term sentence for aggravated battery, which was the lesser of the two offenses. The State agrees.

13

With exceptions that are not applicable to this case, a defendant who is convicted of two offenses may be sentenced to an extended term only for the offense of the more serious class. 730 ILCS 5/5--8--2(a) (West 2006); People v. Bell, 196 Ill. 2d 343, 751 N.E.2d 1143 (2001). We review a trial court's sentencing decision for abuse of discretion. People v. Stacey, 193 Ill. 2d 203, 737 N.E.2d 626 (2000).

In this case, the defendant was convicted of attempted armed robbery (720 ILCS 5/8--4(a), 18--2 (West 2006)) and aggravated battery (720 ILCS 5/12--4(a) (West 2006)). Attempted armed robbery is a Class 1 felony. 720 ILCS 5/8--4(c)(2), 18--2 (West 2006). The form of aggravated battery for which the defendant was convicted is a Class 3 felony. 720 ILCS 5/12--4(e)(1) (West 2006). This form of aggravated battery is a lesser class offense than attempted armed robbery. The trial court erred by sentencing the defendant to an extended term for the lesser of the two offenses. See 730 ILCS 5/5--8--2(a) (West 2006); Bell, 196 Ill. 2d 343, 751 N.E.2d 1143. Therefore, we hold that the trial court abused its discretion in sentencing the defendant to an extended term for aggravated battery. Consequently, we vacate the sentence for aggravated battery and remand the matter for resentencing on that offense.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgments of conviction imposed by the Peoria County circuit court, vacate the

14

sentence for aggravated battery, and remand the cause for resentencing on that offense.

Affirmed in part and vacated in part; cause remanded with directions.

O'BRIEN, P.J. concurring.

JUSTICE McDADE, dissenting:

The majority has affirmed the judgments of conviction imposed by the Peoria County Circuit Court, finding that the court's failure to comply with the requirements of the 2007 version of Supreme Court Rule 431(b) (Official Reports Advance Sheet No. (April 11, 2007), R. 431(b), eff. May 1, 2007) does not satisfy the "plain error" test and, therefore, does not require that the conviction be reversed and the matter remanded for a new trial. I dissent from this judgment for the reasons stated in my dissent in *People v. Alexander*, No. 3--07--0915 (November 30, 2009).

Because I would reverse the convictions, I do not reach the extended-term sentencing issue raised by the defendant.

15