Filed 8/30/10          NO. 4-09-0369

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,  )  Appeal from
          Plaintiff-Appellee,           )  Circuit Court of
          v.                             )  Schuyler County
GEORGE H. CROW III,                      )  No. 08CM74
          Defendant-Appellant.           )
                                         )  Honorable
                                         )  Mark A. Schuering,
                                         )  Judge Presiding.
_____

          JUSTICE McCULLOUGH delivered the opinion of the court:

          A jury found defendant, George H. Crow III, guilty of

domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2008)), and the

trial court sentenced him to 24 months' probation and 180 days in

jail.  He appeals, arguing (1) his conviction should be reversed

because the court failed to determine whether jurors understood

or accepted the principles set forth in Supreme Court Rule 431(b)

(Official Reports Advance Sheet No. 8 (April 11, 2007), R.

431(b), eff. May 1, 2007) and (2) he is entitled to a $15 credit

toward his $200 domestic-violence fine.  We modify the court's

sentencing order to reflect that defendant is entitled to a $15

credit for his presentence incarceration but otherwise affirm the

court's judgment and remand for issuance of an amended sentencing

judgment.

          On September 3, 2008, the State charged defendant with

domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2008)), alleging

he knowingly caused bodily injury to his wife, Jackie Crow, by grabbing her by the face and scratching her cheek, pulling her hair, and shoving her head against a wall.  Defendant pleaded not guilty and demanded a jury trial.  Also, prior to trial, he waived his right to counsel and elected to represent himself.

On February 18, 2009, defendant's jury trial began.  During voir dire, the trial court proposed similar questions to all jurors, questioning one juror by himself and the remainder of the jurors in groups.  It used substantially the same language during its questioning of all potential jurors, inquiring as follows:

"Q. Do you understand that a person charged with a crime is presumed to be innocent of the charge against him; and, secondly, do you understand the presumption of innocence stays with the defendant throughout the trial, and is not overcome unless from all the evidence in the case you believe the State has proved his guilt beyond a reasonable doubt.  Do you understand both of those?

***

Q. The next set of questions, do you understand the State must prove the defendant guilty beyond a reasonable doubt, and do you

understand that the defendant does not have

to prove anything, in other words, he does

not have to prove his innocence?"

Defendant did not object to the court's questioning. He also elected not to testify on his own behalf. During the jury-instruction conference, the trial court informed defendant that he could submit an instruction to inform jurors that they must not consider the fact that he did not testify when arriving at a verdict. See Illinois Pattern Jury Instructions, Criminal, No. 2.04 (4th ed. 2000). He declined to submit such an instruction. The jury returned a verdict, finding defendant guilty of the charged offense.

On March 20, 2009, defendant, with the aid of counsel, filed motions for a judgment notwithstanding the verdict and a new trial. He raised no issue with respect to the trial court's questioning of jurors during voir dire. On May 7, 2009, the court denied defendant's posttrial motions and sentenced him to 24 months' probation and 180 days in jail.

This appeal followed.

On appeal, defendant argues the trial court improperly failed to comply with the requirements of Rule 431(b). Specifically, he argues that, during voir dire, the court failed to admonish or question potential jurors about (1) their understanding and acceptance of the principle that a defendant's failure to

testify cannot be held against him or (2) their acceptance of the remaining three Rule 431(b) principles.  Defendant asks this court to reverse his conviction and remand the case for a new trial.

The supreme court rules are not mere suggestions; instead, they have the force of law and should be followed. People v. Glasper, 234 Ill. 2d 173, 189, 917 N.E.2d 401, 411 (2009).  Questions involving the trial court's compliance with a supreme court rule are subject to de novo review.  People v. Yusuf, 399 Ill. App. 3d 817, 820, 928 N.E.2d 143, 146 (2010).

In People v. Zehr, 103 Ill. 2d 472, 477, 469 N.E.2d 1062, 1064 (1984), the supreme court held that "essential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him."  Rule 431(b) ensures compliance with Zehr.  Yusuf, 399 Ill. App. 3d at 820, 928 N.E.2d at 147.  It requires that the trial court ask specific questions of potential jurors during voir dire examination, providing as follows:

> "The court shall ask each potential
> juror, individually or in a group, whether
> that juror understands and accepts the fol-

lowing principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects."  Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

Here, defendant failed to preserve this issue for review by neglecting to raise it with the trial court.  See People v. Lovejoy, 235 Ill. 2d 97, 148, 919 N.E.2d 843, 871 (2009) ("To preserve an issue for appellate review, a defendant must both object at trial and present the issue in a written posttrial motion").  Nevertheless, the plain-error doctrine may be applied to excuse his forfeiture.  Yusuf, 399 Ill. App. 3d at 820, 928 N.E.2d at 146.

"The plain-error doctrine allows a reviewing court to remedy a 'clear or obvious error' in

two circumstances, regardless of the defen-
dant's forfeiture: (1) where the evidence in
the case is so closely balanced that the
jury's guilty verdict may have resulted from
the error and not the evidence; or (2) where
the error is so serious that the defendant
was denied a substantial right, and thus a
fair trial." People v. McLaurin, 235 Ill. 2d
478, 489, 922 N.E.2d 344, 351 (2009).

The first step in a plain-error analysis is to determine whether any error occurred at all. Yusuf, 399 Ill. App. 3d at 820, 928 N.E.2d at 146.

Rule 431(b) plainly requires a trial court to question potential jurors as to their understanding and acceptance of the four stated principles. In this instance, the trial court asked each prospective juror about his or her understanding of only the first three principles. It neglected to question jurors as to their acceptance of those first three principles and entirely failed to reference the fourth principle in its questioning. The court's actions constituted error.

Since error occurred, we must next determine whether the evidence was closely balanced or whether the error was so serious that it denied defendant a substantial right and a fair trial. Here, defendant does not argue, nor does the record

reflect, that the evidence was closely balanced.

Evidence presented at defendant's trial showed Jackie and defendant lived together with their two daughters. The State introduced statements signed by Jackie and the couple's 14-year-old daughter, Tabitha. According to Jackie's statement, she and defendant got into an argument and defendant grabbed her by the face, scratched her face, and slammed her head into the front door of the home. She reported defendant grabbed her by the back, sides, butt, and legs. He also grabbed her and repeatedly slammed her into the wall. Tabitha's statement showed defendant pulled Jackie's hair, grabbed her face, and scratched her. A photograph of Jackie was introduced into evidence showing an injury to her face.

Schuyler County Sheriff Don Schieferdecker took Jackie's statement. When he met with her, she was "crying," "very red in the face," and "very emotionally upset." Jackie reported that she had been in a domestic fight with defendant. Schieferdecker prepared Jackie's statement, and Jackie looked it over and signed it. Schuyler County deputy sheriff Leo Icenogle met with Tabitha on the date of the alleged offense. Tabitha reported that her parents got into an argument and her father struck her mother several times. Icenogle questioned Tabitha and prepared a statement based upon his questions and her answers. Tabitha and Jackie both signed the statement.

At trial, Jackie and Tabitha recanted their statements to police. Jackie acknowledged she and defendant argued but denied that there had been any physical contact. She asserted she tried to block defendant from leaving the home and his cigarette hit her on the cheek and left a mark. Jackie testified defendant threatened to go to the police so she hurried to the police station. She wanted to be the first to file a complaint because she was worried about losing her state job. Although Jackie admitted that she gave a statement to police and signed it, she denied providing any of the information contained in the statement submitted at trial. She testified she did not read the document that she signed because she was upset. Jackie also testified that she wanted the case dropped and wished to continue her relationship with defendant.

Tabitha, after first denying that she had any recollection of the incident at issue, testified she remembered her parents screaming at each other. She denied witnessing any physical contact between the two or that she provided any of the information contained in her signed statement. Tabitha acknowledged that her signature appeared on the statement.

We find the evidence against defendant was overwhelming. It showed Jackie immediately reported the incident to police and both she and Tabitha provided statements that showed defendant grabbed Jackie, scratched her, pulled her hair, and

shoved her against a wall. At the time she provided her statement, Jackie was upset and crying. A photograph showed an injury to her face. Testimony from Jackie and Tabitha that they did not provide the information contained in their signed statements or did not remember the events surrounding the alleged offense was not credible. The evidence was not closely balanced.

We next consider whether the trial court's error was so serious that it denied defendant a substantial right and a fair trial. In Glasper, 234 Ill. 2d at 189, 917 N.E.2d at 411, the trial court violated Rule 431(b) by refusing the defendant's request to question prospective jurors as to the fourth principle, regarding the defendant's decision not to testify. Under the version of Rule 431(b) applicable at the time, questioning under the rule was not mandatory unless it was requested by the defendant. Glasper, 234 Ill. 2d at 189, 917 N.E.2d at 411. The supreme court identified the issue before it as "whether the trial court's error, based on a violation of [s]upreme [c]ourt [r]ule, denied the defendant his constitutional right to a fair and impartial jury such that the error was presumptively prejudicial and required automatic reversal." Glasper, 234 Ill. 2d at 194, 917 N.E.2d at 414. Ultimately, the court concluded that the trial court's Rule 431(b)(4) violation was amenable to harmless-error review and did not require automatic reversal. Glasper, 234 Ill. 2d at 200, 917 N.E.2d at 418.

In reaching its decision, the supreme court noted the error did "not involve a fundamental right, or even a constitutional protection." Glasper, 234 Ill. 2d at 193, 917 N.E.2d at 413. Instead, the error concerned a right made available by rule, and "[t]he violation of a Supreme Court Rule does not mandate reversal in every case." Glasper, 234 Ill. 2d at 193, 917 N.E.2d at 414. The court stated that, while Rule 431(b)(4) was "designed to help ensure that defendants are tried before a fair jury," it could not "say that Rule 431(b)(4) questioning is indispensable to a fair trial." Glasper, 234 Ill. 2d at 196, 917 N.E.2d at 416. It reasoned as follows:

> "This point is inherent in the rule itself, which originally required the questioning only if the defendant requested it. It would be inconsistent to conclude that the failure to question the venire in compliance with Rule 431(b)(4) ensures that biased jurors will be impaneled when a defendant can choose to forgo such questioning, apparently without such concerns." Glasper, 234 Ill. 2d at 196-97, 917 N.E.2d at 416.

The supreme court went on to state that "automatic reversal is only required where an error is deemed 'structural,' i.e., a systemic error which serves to 'erode the integrity of

- 10 -

the judicial process and undermine the fairness of the defendant's trial.'" Glasper, 234 Ill. 2d at 197-98, 917 N.E.2d at 416, quoting People v. Herron, 215 Ill. 2d 167, 186, 830 N.E.2d 467, 479 (2005). The court noted that the alleged error in the case before it was not included within the limited class of errors recognized by the United States Supreme Court as "structural." Glasper, 234 Ill. 2d at 198, 917 N.E.2d at 416. It concluded that the trial court's error did not rise to the level of "structural" error. Glasper, 234 Ill. 2d at 199, 917 N.E.2d at 417.

The supreme court emphasized that its holding was limited to the version of the rule in effect at the time of the defendant's trial and would not necessarily apply to subsequent versions of the rule. Glasper, 234 Ill. 2d at 200, 917 N.E.2d at 418. It also made clear that it was "not holding that a Rule 431(b)(4) violation could never result in reversible error." Glasper, 234 Ill. 2d at 200, 917 N.E.2d at 418. The court stated that if facts demonstrated that a Rule 431(b)(4) violation resulted in the defendant being tried before a biased jury, it "would not hesitate to reverse [the] defendant's conviction, as a trial before a biased jury would constitute structural error." Glasper, 234 Ill. 2d at 200-01, 917 N.E.2d at 418.

In People v. Amerman, 396 Ill. App. 3d 586, 594, 919 N.E.2d 1068, 1075 (2009), the Third District found that, although

- 11 -

Glasper was a harmless-error case, its structural-error discussion and rationale equally applied to the second prong of the plain-error analysis. This court has found that "the rationale in Glasper applies to the present version of Rule 431(b)." People v. Wrencher, 399 Ill. App. 3d 1136, 1148, 929 N.E.2d 1124, 1134 (2009). Recently, the Second District has also held "that the Glasper reasoning applies to the current version of Rule 431(b) with equal force and that a similar analysis under the plain-error doctrine as under harmless-error analyses is required before reversing a defendant's conviction." People v. Patrick, No. 2-08-0745, slip op. at 26 (July 27, 2010), ___ Ill. App. 3d ___, ___, ___ N.E.2d ___, ___.

Here, defendant relies heavily upon this court's decision in People v. Blanton, 396 Ill. App. 3d 230, 925 N.E.2d 703 (2009). In that case, the trial court fulfilled its duties with respect to the first three Zehr and Rule 431(b) principles but neglected to either advise jurors of the fourth principle (that the defendant's failure to testify could not be held against him) or to question their understanding and acceptance of that fourth principle. Blanton, 396 Ill. App. 3d at 235, 925 N.E.2d at 706-07. This court found error clearly occurred and, applying a plain-error analysis, determined that the court's error was "'so substantial that it affected the fundamental fairness of the proceeding.'" Blanton, 396 Ill. App. 3d at 235-

- 12 -

36, 925 N.E.2d at 707-08, quoting People v. Hall, 194 Ill. 2d 305, 335, 743 N.E.2d 521, 539 (2000). We reversed the trial court's judgment and remanded for a new trial. Blanton, 396 Ill. App. 3d at 236, 925 N.E.2d at 708.

We now find Blanton was wrongly decided. First, Blanton attempted to distinguish Glasper on the basis that it involved a former version of Rule 431(b) that did not mandate questioning pursuant to the rule unless expressly requested by the defendant. Blanton, 396 Ill. App. 3d at 238, 925 N.E.2d at 710. However, in Glasper, the defendant's counsel requested Rule 431(b)(4) questioning. Glasper, 234 Ill. 2d at 189, 917 N.E.2d at 411. As a result, the trial court had a mandatory obligation to question the jury as set forth in the rule that is similar to the mandatory duty now contained in the amended version of the rule. See People v. Magallanes, 397 Ill. App. 3d 72, 92, 921 N.E.2d 388, 405 (2009) ("there is no quantitative or qualitative difference between the trial court failing to admonish jurors when requested to do so, as in Glasper, and when the trial court fails to admonish jurors under the amended rule, as in the present case"); see also People v. Alexander, 396 Ill. App. 3d 563, 576, 919 N.E.2d 1016, 1027 (2009) (finding the difference between the former and amended versions of Rule 431(b) did not preclude application of Glasper's rationale). The supreme court's analysis in Glasper is equally applicable to the facts

- 13 -

presented here.

Blanton next distinguished Glasper on the basis that, unlike in Blanton, the jury in Glasper "had been admonished and instructed against forming an adverse inference against [the] defendant based on his decision not to testify." Blanton, 396 Ill. App. 3d at 239-40, 925 N.E.2d at 711. Blanton accurately references one factor relied upon by the supreme court. However, in Glasper, the court also pointed to the absence of facts that demonstrated the defendant was tried before a biased jury. Glasper, 234 Ill. 2d at 200-01, 917 N.E.2d at 418. Further, the court rejected the claim that the error in failing to comply with Rule 431(b) could not be "'"qualitatively assessed for harm,"'" finding a rational-juror standard could be applied to the evidence adduced against the defendant. Glasper, 234 Ill. 2d at 201, 917 N.E.2d at 418, quoting People v. Rivera, 227 Ill. 2d 1, 20, 879 N.E.2d 876, 888 (2007). Here, the record contains no evidence that defendant's jury was biased and, again, the evidence against defendant was overwhelming.

Additionally, as stated, Glasper held "[i]t would be inconsistent to conclude that the failure to question the venire in compliance with Rule 431(b)(4) ensures that biased jurors will be impaneled when a defendant can choose to forgo such questioning, apparently without such concerns." Glasper, 234 Ill. 2d at 196-97, 917 N.E.2d at 416. The amended version of Rule 431(b)

- 14 -

continues to allow a defendant to forgo questioning regarding his decision not to testify. While nothing in the record indicates that defendant in this case chose to forgo Rule 431(b)(4) questioning, he did expressly reject the opportunity to have his jury instructed regarding his decision not to testify.

Although the facts in Blanton are similar to the facts of the case at bar, we disagree with the distinctions made in Blanton with respect to Glasper. Instead, we find the rationale employed in Glasper equally applies to the facts of the present case. Here, potential jurors were questioned as to their understanding of the first three Zehr principles. Defendant, himself, rejected instructing the jury as to the subject matter of the fourth principle. No evidence was presented that showed defendant was tried before a biased jury. Also, the evidence against him was overwhelming. The trial court's errors were not "structural." Further, its errors do not amount to plain error or warrant reversal of defendant's conviction.

Finally, on appeal, defendant argues he is entitled to a $5 per diem credit, totaling $15, toward the $200 domestic-violence fine the trial court imposed. Section 110-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-14 (West 2008)) provides that "[a]ny person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction *** shall be allowed a credit of $5 for each

- 15 -

day so incarcerated upon application of the defendant."  On appeal, a defendant may be allowed a per diem credit pursuant to section 110-14 for incarceration prior to sentencing.  People v. Woodard, 175 Ill. 2d 435, 457-58, 677 N.E.2d 935, 946 (1997).  The State concedes that defendant is entitled to a $15 credit, and the record supports its concession.  We modify the court's sentence to show defendant is entitled to a $15 credit for his three days of presentence incarceration.

For the reasons stated, we affirm the trial court's judgment as modified and remand for issuance of an amended sentencing judgment reflecting the credit against fine stated.  As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed as modified; cause remanded with directions.

KNECHT and TURNER, JJ., concur.